XR CO., a Florida corporation, and Robert Koeppel, Plaintiffs,

v.

BLOCK & BALESTRI, P.C., a professional corporation, Steven R. Block, P.C., a professional corporation, and Steven R. Block, Defendants.

No. 98–1725–CIV.

United States District Court, S.D. Florida.

March 24, 1999.

Hugo L. Black, Jr., Kelly, Black, Black, Byrne & Beasley, P.A., Miami, FL, for Plaintiffs.

Dario Perez, Shutts & Bowen, LLP, Miami, FL, for Defendants.

## ORDER OF TRANSFER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56 or, in the alternative, to transfer venue pursuant to Fed. R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404. The request for transfer of venue is predicated on a forum selection clause. Finding said clause enforceable, the Court grants the motion to transfer venue and denies the defendants' alternative motions as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs XR Co. and Robert Koeppel commenced this legal malpractice action in Florida state court against Steven R. Block, an attorney practicing in Dallas, Texas and his related professional associations, Steven R. Block, P.C. and Block & Balestri, P.C. (collectively, "the Block defendants"). The case arises from legal work performed by Steven Block in connection with Plaintiff XR Co.'s acquisition of Ocean Optique Distributors, Inc. ("Ocean"), a publicly traded company listed on the NASDAQ. Both XR Co. and Ocean are Florida corporations. Plaintiff Koeppel, who is XR Co.'s sole and controlling shareholder, resides in Miami, Flori-

da. In early January, 1998, Block traveled to Miami, at which time he rendered various legal services FOR the take-over of Ocean. The principal task performed by Block was the preparation of a consulting agreement between XR Co. and Ocean, which became the vehicle for acquisition of Ocean by XR Co.[1]

Koeppel and XR Co. claim that, unbeknownst to them, Block attached a preemptive right to certain shares issued by Ocean in connection with the consulting agreement. According to Koeppel and XR Co., this "unauthorized" provision has made it difficult, if not impossible, to use the newly-issued shares for purposes of other transactions. Koeppel and XR Co.'s theory appears to be that Block inserted this provision for the benefit of the Block defendants, since part of their compensation for legal services was to be in the form of Ocean shares. Koeppel and XR Co. claim damages in the sum of $2.5 million.[2]

The Block defendants removed the malpractice case to this Court on the basis of diversity jurisdiction. They now seek to transfer the case to the Northern District of Texas, Dallas Division, pursuant to a forum selection clause contained in their retainer agreement. Before discussing the enforceability of the clause, however, the Court must address a procedural point.

■ As previously noted, in addition to moving for transfer of venue, pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404, the Block defendants have moved for dismissal under Fed.R.Civ.P. 12(b), generally, and for summary judgment pursuant to Fed.R.Civ.P. 56. According to the Block defendants, this was done in an abundance of caution due to the existence of divergent authority regarding the proper method for invoking a forum selection clause. The Eleventh Circuit has recently dispelled this uncertainty by stating that motions to dismiss upon the basis of forum selection clauses are cognizable as motions to dismiss for improper venue, hence more properly asserted pursuant to Fed. R.Civ.P. 12(b)(3). *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1290 (11th Cir.1998). In this case, however, the Block defendants do not seek dismissal under Rule 12(b)(3). Rather, they seek transfer by invoking that rule in conjunction with 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[3]

As more fully discussed below, Section 1404 has been applied by both the United States Supreme Court and the Eleventh Circuit to venue transfer decisions predicated upon forum selection clauses. *See Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *In Re Ricoh Corp.,* 870 F.2d 570 (11th Cir.1989).[4] Therefore, the Court finds it appropriate to address the transfer sought by the Block defendants under Rule 12(b)(3) and Section 1404, and finds no necessity for considering the Block defendants' alternative motions to dismiss under Rule 12(b), generally, and for summary judgment.[5]

---

1. The structuring of payment for these consulting services with Ocean stock resulted in XR Co.'s becoming Ocean's majority stockholder, thereby gaining control of the company.

2. The Block defendants, in turn, have filed an action in Texas seeking to recover, *inter alia,* unpaid attorneys' fees plus a contingent fee in the form of Ocean shares (the "Texas action").

3. Because the Block defendants reside in Dallas, Texas, the Northern District of Texas, Dallas Division, is a proper alternative venue for this action. *See* 28 U.S.C. § 1391(a)(1) (In a diversity action, venue is properly laid in "a judicial district where any defendant resides, if all defendants reside in the same State.")

4. Both cases arise from the same controversy.

5. For this reason, the Court need not consider the plaintiffs' arguments against dismissal of this action in deference to the previously filed "Texas action"; nor the material issues of

## STANDARD OF REVIEW

Having established the proper procedural framework, the Court articulates the legal considerations governing the enforcement of forum selection clauses by courts sitting in diversity in the Eleventh Circuit. In *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the United States Supreme Court held that federal law, specifically, 28 U.S.C. § 1404(a), governs a district court's decision whether to give effect to a forum selection clause in diversity cases. In addressing the issue in this fashion, the Supreme Court declined to adopt the approach followed by the Eleventh Circuit, who had applied the standards articulated in the admiralty case of *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) to *Stewart*, a diversity case. *Id.* at 25, 108 S.Ct. 2239. According to the Supreme Court, district courts applying section 1404(a) to choice of forum disputes in diversity cases, should "weight in the balance a number of case-specific factors," among which, the presence of a forum selection clause "will be a significant factor that figures centrally in the district court's calculus." *Id.* at 29, 108 S.Ct. 2239. The case-specific issues to be addressed include "the convenience of [the selected] forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Id.*

Concurring with the majority opinion in *Stewart*, Justice Kennedy stated:

I write separately only to observe that enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. Although our opinion in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), involved a Federal District court sitting in admiralty, its reasoning applies with much force to federal courts sitting in diversity. The justifications we noted in *The Bremen* to counter the historical disfavor forum-selection clauses had received in American courts should be understood to guide the District Court's analysis under § 1404(a).

... Though state policies should be weighed in the balance, the authority and prerogative of the federal courts to determine the issue, as Congress has directed by § 1404(a), should be exercised so that a valid forum-selection clause is given controlling weight *in all but the most exceptional cases.*

*Id.* at 33, 108 S.Ct. 2239 (Kennedy, J., concurring) (emphasis added) (citations omitted).

In *In Re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989), the Eleventh Circuit construed the *Stewart* decision as effectuating an alteration of the traditional burden of persuasion with regard to forum selection. Acknowledging that federal courts traditionally accord a plaintiff's choice of forum considerable deference, the Eleventh Circuit concluded, nevertheless, that "when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *Id.* at 573. Moreover, relying on Justice Kennedy's concurring remarks in *Stewart*, the Eleventh Circuit delineated this burden as requiring that a case "present the type of 'exceptional' situation in which judicial enforcement of a contractual choice of forum clause would be improper." *Id.* at 574. Among such exceptional circumstances would be "the presence of fraud, duress, misrepresentation, or other misconduct that would bar the clause's enforcement"; or "intervening and unexpected occurrences between the contract's formation and the filing of the suit, [so that] the contract's purpose would be frustrated

fact which, they claim, preclude the entry of summary judgment.

[by enforcement of the clause]." *Id.* at 573–74.

## DISCUSSION

Based on the foregoing criteria, Koeppel and XR Co., as opponents to enforcement of the forum selection clause in this case, bear the burden of persuading this Court that Texas is a sufficiently inconvenient forum to justify retention of the dispute in the Southern District of Florida. The clause is found in a letter of engagement, dated January 3, 1998, addressed to Mr. Robert Koeppel, Miami, Florida. The letter agreement is signed by Steven Block on behalf of Steven R. Block, P.C. and Block & Balestri, P.C. It also bears the acceptance signature of Robert Koeppel, followed by the notation "XR Co. Auth. Sig." [6]

Paragraph 10 of the letter agreement contains the forum selection clause. Because that provision makes reference to Paragraph 9, both are reproduced in full:

9. *Disagreements Regarding Fees.* In the event that you believe any statement for our services is erroneous for any reason, you shall notify us of the same within 10 business days after receipt of such statement stating the basis for your belief. If agreement cannot be reached with respect to the amount owed, you agree to pay promptly the nondisputed portion of our statement and submit the disputed portion for resolution by the appropriate committee of the Dallas Bar Association, or if none, by The Committee on Arbitration of the State Bar of Texas Relating to Fee Disputes.

10. *Governing Law.* THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS AND, EXCEPT FOR DISAGREEMENTS REGARDING FEES SUBMITTED TO ARBITRATION PURSUANT TO PARAGRAPH 9 ABOVE, VENUE FOR ANY OTHER ACTION HEREUNDER SHALL BE IN DALLAS COUNTY, TEXAS.

■ Preliminarily, the Court finds no indicia that would render the clause invalid. It is conspicuously printed in capital letters as part of the Block defendants' retainer agreement. In addition, the selected forum, where the Block defendants reside, is both reasonable and viable. The plaintiffs have not adduced any evidence of fraud, duress or misrepresentation in the negotiation of the retainer agreement; nor have any intervening events transpired such that enforcement of the clause would frustrate the purpose of the retainer agreement. Moreover, Koeppel cannot claim that the retainer agreement was negotiated from positions of unequal bargaining power. In this regard, the Court notes that Block's legal representation involved the acquisition of a publicly traded company, a fairly complex financial matter; and Koeppel does not claim to be an unsophisticated player in this arena.

In opposing transfer, the plaintiffs claim that all the witnesses, documents and evidence necessary to *prove* their case are located in Florida. Predictably, the Block defendants state that all documents, records and witnesses necessary to *defend* the case are located in Texas. Therefore, the Court concludes that, in terms of overall inconvenience, the plaintiff has not carried the burden of showing that the Texas forum is any more inconvenient than Florida.

■ As previously noted, Koeppel contends that, even if XR Co. is bound by the clause, his form of acceptance of the letter agreement does not bind him individually. In support of this argument, Koeppel stresses that his signature on the agreement bears the qualification "XR Co. Auth. Sig." Interestingly, however, Koeppel claims to be an "intended beneficiary" of the letter agreement (based on his status as sole and controlling shareholder of

---

**6.** At a later point, the Court addresses Koeppel's contention that, due to the form of this signature, he is not bound by the forum selection clause, even if XR Co. is bound.

XR Co.) in order to establish standing for his individual malpractice claims against the Block defendants. Thus, it appears that Koeppel invokes his relationship to XR Co. both as a sword (for purposes of asserting his malpractice claim), and as a shield (for purposes of avoiding the forum selection clause). In any event, Koeppel's argument must fail in light of the Eleventh Circuit's opinion in *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285 (11th Cir.1998). In *Lipcon,* the Eleventh Circuit ruled that the spouses of two Lloyd's "Names", who signed letters of credit to provide collateral for the investments but did not sign the "General Undertaking" containing the forum selection clause at issue, were bound by the clause. *Id.* at 1299. According to the Eleventh Circuit, where the interests of a non-party are "completely derivative of", that is, "directly related to, if not predicated upon" those of a contracting party, the non-party is bound by the contract's forum selection clause. *Id.* In this case, it is undisputed that Koeppel is the sole and controlling shareholder of XR Co. and that the acquisition of Ocean by XR Co. would inure to his personal benefit. Therefore, even if Koeppel did not sign the letter agreement in his individual capacity, he is still bound by the forum selection clause contained in the agreement.[7]

Koeppel and XR Co. also maintain that the Block defendants have waived enforcement of the forum selection clause by instituting the Texas action to recover fees, instead of proceeding to arbitration. In making this argument, the plaintiffs seize on the previously noted reference in Paragraph 10 (Governing Law) to Paragraph 9 (Disagreements Regarding Fees), to conflate the two provisions. A plain reading of Paragraph 9 reveals that it requires the

client to present fee disputes to an arbitration panel; it is silent regarding the procedure to be followed by counsel to recover fees. Assuming, *arguendo,* that Paragraph 9 requires arbitration of any fee matter, nothing in Paragraph 10 supports the plaintiffs' contention that waiver of the arbitration clause results, *ipso facto,* in waiver of the forum selection clause.

Finally, the Court considers the plaintiffs' invocation of Florida's public policy as a bar to enforcement of the forum selection clause. According to the plaintiffs, transfer of this malpractice action to Texas would condone the circumvention of Florida's prohibition against the unauthorized practice of law. In this case, however, the plaintiffs (or, at least, XR Co.) appear to have purposely engaged the services of a Texas lawyer for the financial transactions they were contemplating. Thus, the Court is at a loss to grasp the purported effect that the transfer of this litigation to Texas, pursuant to the terms of the parties' contract for those services, would have on the enforcement of Florida's Rules of Professional Conduct.

## CONCLUSION

Having addressed the plaintiffs' various arguments against enforcement of the forum selection clause at issue, the Court concludes that said clause is valid and enforceable. Therefore, it

ORDERED AND ADJUDGED as follows:

(1) The defendants' motion to transfer venue, pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404, is GRANTED.

(2) The Clerk of Court is DIRECTED to transfer this action to the United States

---

**7.** Koeppel also makes a claim that the Block defendants have breached their duties as attorneys to provide full and frank disclosure, act honestly and deal fairly with potential clients "by virtue of continuing in their attempt to trick [Koeppel] individually into signing the agreement without full, frank and open disclosure." *See* Defendant's Response

Memorandum, at 12 n. 5. This statement is facially circular. Moreover, to the extent that it purports to establish fraud, duress or misrepresentation in the retainer negotiations, it falls far short of the mark. As previously noted, Koeppel is not an unsophisticated client. Indeed, Koeppel is listed as an active attorney in the 1998 Florida Bar Journal.

District Court for the Northern District of Texas, Dallas Division.

(3) The defendants' alternative motions to dismiss and for summary judgment are DENIED as moot. Plaintiff's request for oral argument on defendants' motions is similarly DENIED as moot.

(4) This action is CLOSED in the Southern District of Florida.