929 So.2d 678 (2006)
DELOITTE & TOUCHE, Appellant,
v.
GENCOR INDUSTRIES, INC., Appellee.
No. 5D05-1734.
District Court of Appeal of Florida, Fifth District.
May 19, 2006.
James S. Toscano, of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, and Jennifer L. Conn, of Gibson, Dunn & Crutcher, LLP, New York, NY, for Appellant.
Walter A. Ketcham, Jr., and Ramon Vazquez, of Grower, Ketcham, Rutherford, Bronson, Eide Telan, P.A., Orlando, and Frank T. Apodaca of Susman Godfrey, LLP, Houston, TX, for Appellee.
GRIFFIN, J.
Appellant, Deloitte and Touche, a general partnership organized under the laws of *679 the United Kingdom ("DTGP"), appeals two non-final orders denying its motion to dismiss for lack of in personam jurisdiction and improper venue. We affirm the order on jurisdiction, but reverse the order on venue.
In the second amended complaint appellee, Gencor Industries, Inc. ("Gencor"), filed suit against its Florida auditor, Deloitte and Touche U.S. ("Deloitte U.S.") and DTGP concerning allegedly negligent audit work performed in the United Kingdom. Gencor ACP, a United Kingdom wholly-owned subsidiary of Gencor, had engaged DTGP to perform the work, which Gencor alleges failed to disclose a scheme on the part of Gencor ACP's senior management to conceal the company's true financial condition. Gencor's damage claims range from the cost of a second audit, to shareholder lawsuits, to delisting from its stock exchange and allegedly exceed $26 million.
The two claims asserted are "professional negligence" and "negligent misrepresentation." The second amended complaint asserts that in personam jurisdiction against DTGP is proper pursuant to section 48.193, Florida Statutes, because DTGP committed a tortious act within the state and because DTGP carried on business within the state. Venue in Orange County is alleged to be proper based on the cause of action accruing in Orange County.
Deloitte U.S. had been Gencor's accounting firm since 1993. In 1997, Gencor acquired a United Kingdom company known as ACP Holdings, Ltd. ("ACP Holdings"), which after the acquisition became Gencor ACP ("Gencor ACP"). Gencor asserted that Deloitte U.S. and DTGP conducted reviews of Gencor ACP's financial statements for quarterly periods in 1998, rendered an opinion on ACP Holdings' balance sheet dated September 30, 1997, and audited ACP Holdings' financial statements for the nine month period that ended September 30, 1997, but failed to uncover the scheme by Gencor ACP's senior management.
DTGP filed a motion to dismiss on three grounds: that the trial court lacked in personam jurisdiction, that venue in Florida was improper based on a forum selection clause contained in the engagement letter between DTGP and Gencor ACP, and because the statute of limitations had expired.[1] Both parties submitted affidavits in support of their respective positions.
Two hearings were conducted by the lower court. After the first hearing, the trial court denied DTGP's motion as to jurisdiction. The court ruled as follows:
DTGP and DTLLP assert that there is no personal jurisdiction over them, as they are English businesses and all of the work was performed in England. The affidavits filed in support of their motions to dismiss, however, concede that DTGP's employees communicated with DTUS regarding the work performed for Gencor ACP. Gencor argues that those statements, among others, constitute the negligent misrepresentations. It is further undisputed that DTGP knew that Gencor's principal place of business is in Florida, and therefore that any misrepresentations to Gencor would have an impact in Florida. Thus, personal jurisdiction exists over DTGP. OSI Indus. Inc. v. Carter, 834 So.2d 362, 367-68 (Fla. 5th DCA 2003) (telephone call from out of state defendant *680 to plaintiff in Florida that plaintiff alleged contained negligent misrepresentations was sufficient to constitute committing a tort in Florida and adequate minimum contacts to satisfy due process where defendant knew misrepresentations would impact plaintiff in Florida.)
Importantly, the court found that personal jurisdiction existed based on communications between DTGP's employees and Deloitte U.S. employees regarding work performed on behalf of Gencor ACP.
The venue and statute of limitations arguments were heard at the second hearing. The trial court again denied DTGP's motion to dismiss. The court ruled that the venue provision contained in the letter of engagement between Gencor ACP and DTGP requiring suit to be brought in the United Kingdom was not enforceable against Gencor because Gencor was not a party to the engagement contract between Gencor ACP and DTGP.
We must affirm on the issue of jurisdiction. In its second amended complaint, Gencor claims there is jurisdiction over DTGP because DTGP committed "tortious acts" in Florida. § 48.193(1)(b), Fla. Stat. (1997). Gencor does not contest that DTGP does not have an office, place of business, employees, agents, mailing address, telephone listing, real estate or property in Florida. Nor does it dispute that no one from DTGP ever traveled to Florida on business for Gencor or any related entity.
In Wendt v. Horowitz, 822 So.2d 1252, 1257-58 (Fla.2002), the supreme court of Florida held that a written communication from outside of the state can constitute the commission of a tortious act for purposes of Florida's long-arm statute and that physical presence in the state is not required to satisfy the constitutionally mandated requirement of minimum contacts. Citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the court concluded that communications from outside the state will satisfy minimum contacts so long as the commercial actor's efforts were purposefully directed toward a resident of Florida. 822 So.2d at 1258. The Wendt court also pointed out that the making of false telephonic, electronic, or written communications into Florida from outside the state will constitute "committing a tortious act" only if the alleged cause of action "arises from" the communications because of the connexity requirement contained in section 48.193(1). Id. at 1260.[2]
The supreme court in Wendt remanded the case to this court to determine whether the plaintiff had stated a cause of action for any tort cognizable in Florida and, if so, whether the communications made into Florida gave rise to the tort. Id. at 1260. Wendt is still the controlling law in Florida, which means that, in this case, we have the same task that we faced on remand in Wendt. See Horowitz v. Laske, 855 So.2d 169 (Fla. 5th DCA 2003). The obstacle we face in this case is similar, although not identical, to the issue in Horowitz. The tort at issue in this case is clearly identified by its title: "negligent misrepresentation." Unlike Horowitz, however, DTGP does not argue in this appeal that Gencor has failed to state a cause of action. Instead, DTGP seeks to limit Gencor to the facts that Gencor has pleaded.
Central to DTGP's argument on appeal is their contention that the only "misrepresentations" Gencor has pleaded are the *681 reports (containing DTGP's inaccurate evaluation of Gencor ACP's financial condition) that Gencor received from Deloitte U.S. The parties appear to agree that DTGP did not transmit its work directly to Gencor. It appears undisputed that DTGP sent its allegedly erroneous work product to Florida, but to Deloitte U.S., not the plaintiff Gencor. DTGP's position is that because Gencor claims only to have relied on the audit and other information it received from Deloitte U.S., the tort alleged cannot have arisen out of DTGP's transmission of its work product to Deloitte U.S. Gencor, for its part, contends on appeal that the transmission of the erroneous reports by DTGP to Deloitte U.S. in Florida was indeed the "communication" from which the tort of negligent misrepresentation arises.
In the order on appeal, the trial court cited and relied on this court's decision in OSI Industries v. Carter, 834 So.2d 362 (Fla. 5th DCA 2003). In OSI Industries, an employee brought an action against his employer alleging that in order to induce him to accept employment, the employer fraudulently and negligently misrepresented to the employee that he could receive equity shares in the corporation in lieu of a pension or retirement plan. The employee's affidavits alleged that the misrepresentations occurred during telephone conversations between the out-of-state employer and the employee located in Florida. The employer did not deny that the telephone communications transpired, rather, it denied a tort was committed in the course of those communications. The OSI Industries court concluded that it was not necessary to determine whether the tort was actually committed in order to determine jurisdiction and that allegations of a misrepresentation communicated from outside Florida into Florida would qualify as "committing a tortious act within this State" under section 48.193(1)(b). This case, then, is different from OSI Industries or any other Florida case we are aware of in that the "misrepresentation" was not made to the party claiming to have been injured by reliance on the misrepresentation. Given the peculiar nature of the particular tort at issue, however, we conclude that this does not matter for jurisdictional purposes.
Although, as Judge Farmer has pointed out in NationsBank, N.A. v. KPMG Peat Marwick, LLP, 813 So.2d 964, 967 (Fla. 4th DCA 2002), there is language in decisions of the Florida supreme court that appear to equivocate on the question whether section 552 of the Restatement (Second) of Torts has been adopted as the law of Florida applicable to suits against an accounting firm for negligent performance of an audit, it is difficult reasonably to reach any other conclusion in light of First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9, 15 (Fla. 1990), and Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334, 338 (Fla. 1997). Section 552 of the Restatement, although commonly referred to as "negligent misrepresentation," is actually entitled "Information Negligently Supplied for the Guidance of Others." Section 552 has several specific elements, almost none of which are properly addressed by allegations of ultimate fact in the "negligent misrepresentation" count of Gencor's complaint. If Gencor had been held to properly plead the elements of section 552, our task in this case should have been considerably simplified. As we wearily continue to point out, Florida is a fact-pleading jurisdiction, not a notice-pleading jurisdiction. Horowitz, 855 So.2d at 172-73. However, because this pleading issue has not been raised and because there is a record developed below consisting of documents and affidavits filed on the jurisdictional issue, we conclude that Gencor's failure *682 to more specifically plead the facts relevant to the particular elements of the tort that concerns us is not fatal to its claim of in personam jurisdiction over DTGP.
Subsection 1 of section 552 provides that: "One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." It appears to be undisputed (for jurisdictional purposes) that DTGP, in the course of the performance of its undertaking as the auditors for Gencor ACP, supplied false information to Deloitte U.S. for its use in preparing Gencor's consolidated financial statement.
Subsection Two of section 552 provides that liability for such a negligent misrepresentation is limited to loss suffered "by the person or one of a limited group of persons for whose benefit and guidance he [the tortfeasor] intends to supply the information or knows that the recipient intends to supply it." (Emphasis added.)
As referenced above, it appears that in order for jurisdiction to be based on the commission of a tortious act in Florida, Florida law does require, at a minimum, that the misrepresentation was made in the State of Florida. As the OSI Industries opinion demonstrates, the inquiry is not whether the tort occurred, but assuming the tort occurred as alleged, did it occur in Florida? This is a matter for the trial court to determine based on examination of the affidavits, or, if necessary, by conducting a limited evidentiary hearing, in order to determine that important jurisdictional fact.
In summary form, the following are some of the allegations contained in the complaint concerning tortious acts committed in Florida by DTGP:
1. Gencor engaged Deloitte U.S. to conduct an independent audit of Gencor's consolidated financial statements for fiscal year 1998 (fifty-two week period ending September 30, 1998).
2. Deloitte U.S. performed part of the audit by and through the professional auditing services of DTGP. DTGP "reviewed and reported on" the financial statements of Gencor ACP.[3]
3. DTGP knew that Gencor would receive and rely on Deloitte U.S.'s quarterly reviews of Gencor's ACP's financial statements and DTGP's work in regard to these reviews.
4. Deloitte U.S. and DTGP provided a copy of the July 29, 1998, audit report to Gencor, and both Deloitte U.S. and DTGP knew that Gencor would rely on it.
5. Deloitte U.S. submitted to Gencor's board of directors and shareholders a "report of independent certified public accounts," dated November 3, 1998.
6. Deloitte U.S.'s consolidated audit, including its Gencor ACP quarterly review reports and audit opinion did not uncover numerous material misstatements, errors and irregularities in Gencor's ACP's financial statements because of an ongoing scheme by its senior management *683 to misrepresent its true financial condition.
7. Deloitte U.S. and DTGP misrepresented that the financial statements of Gencor ACP gave a "true and fair view of the state of affairs of [ACP] as of 30 September 1997."
8. Deloitte U.S. and DTGP also communicated the results of its 1998 quarterly reviews of Gencor ACP to Gencor. These representations were faulty in material respects.
9. Gencor reasonably relied on the accuracy of the 1998 Consolidated Audit Report and incorporated it into Gencor's 1998 SEC form 10-K filing.
Although there is nothing in the record that we can find to establish that DTGP transmitted their reports directly to Gencor, or in any other way communicated their work product to Gencor, under Wendt, it is sufficient to establish the "tortious act" committed in Florida for purposes of jurisdiction that DTGP sent false reports to Florida, that DTGP was aware that these reports would be relied on in Florida by Gencor and they were relied upon in Florida by Gencor.[4]
Although we conclude that there is jurisdiction over DTGP in Florida, we reverse the trial court's decision that DTGP has no right to enforce the mandatory forum selection clause contained in the letter of engagement between Gencor ACP and DTGP to require Gencor to litigate its claims in the United Kingdom. The trial court found that this clause could not be enforced against Gencor because Gencor was not a party to the contract. In other contexts, however, Florida courts have enforced contract terms, including forum selection clauses, against non-signatories. See, e.g., World Vacation Travel, S.A. v. Brooker, 799 So.2d 410, 412 (Fla. 3d DCA 2001) (forum selection clause against non-signatory proper where the claims are directly out of the agreement and the commercial relationship of the parties); Tuttle's Design-Build, Inc. v. Florida Fancy, Inc., 604 So.2d 873, 873-74 (Fla. 2d DCA 1992) (recognizing that a reasonable forum selection clause would be enforced against a non-signatory).[5] This is particularly true where, as here, there exists a close relationship between the non-signatory and signatory and the interests of the non-signatory are derivative of the interests of the signatory. See, e.g., XR Co. v. Block & Balestri, P.C., 44 F.Supp.2d 1296, 1299 (S.D.Fla.1999) (enforcing forum selection clause against sole shareholder of contracting corporation where the shareholder's interests in the contract were derivative of the contracting party and the contract inured to the non-signatory's benefit); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1300 (11th Cir.1998).
Gencor ACP is Gencor's wholly owned subsidiary.[6] The work performed under the engagement letter between DTGP and Gencor ACP is the work at issue in Gencor's claims. As parent and owner of Gencor ACP, Gencor had to have its subsidiary's books reviewed and audited in order to comply both with U.S. law and British *684 law. Even though it was the subsidiary that did the hiring of DTGP, the work was intended in part for Gencor to use in preparing its reports and financial statement and for its use in supervising its own asset. According to the record, DTGP was paid by Gencor ACP for all this work that Gencor has alleged was supplied by DTGP for Gencor's benefit. At the core of Gencor's claim is the fact that Gencor incorporated DTGP's audit into its consolidated financial statement and its reports to others.
As the Eleventh Circuit in Lipcon explained, where the interests of a non-party are directly related to or completely derivative of those of the contracting party, the non-signatory is bound by the contract's forum selection clause. Here, Gencor's claim is completely derivative of the professional engagement of DTGP by its wholly owned subsidiary and the work to be performed was plainly intended to be used by Gencor. Indeed, Gencor is expressly identified in the contract as a recipient of some of the work to be performed:
Additional procedures
We shall carry out a review of each quarter's results for the purposes of Gencor's 10Q return.
We accordingly hold that Gencor is bound by its subsidiary's agreement that disputes arising out of the engagement would be litigated in the United Kingdom.
This analysis does not change because the cause of action sounds in tort. Gencor chose not to sue for breach of contract, but it did sue for professional negligence alleging that DTGP owed Gencor a duty to conduct Gencor ACP's audit with due care. After Max Mitchell, Section 552 of the Restatement is the device Florida courts recognize as the remedy for damage caused by the furnishing by accountants of reports based on negligent audit or accounting work, at least for third parties not in the relationship of privity or near privity that under prior law was the limit of accountant liability in Florida. It is unclear whether a party who is within the traditional zone of liability has a section 552 claim as well. Max Mitchell's extension of liability beyond privies or "near privies" does not mean that the existence of such relationships in a given case is without legal effect. Had the plaintiff been a third party bank making lending decisions on the basis of the report or an investor making an investment decision based on a published audit, the analysis would not be the same. Here, however, it was not only Gencor ACP's work but Gencor's work that DTGP performed and Gencor is bound by the terms of the engagement letter its wholly owned subsidiary executed, pursuant to which the work was performed and paid for.
AFFIRMED in part; REVERSED in part; and REMANDED.
SAWAYA and TORPY, JJ., concur.
NOTES
[1] The denial of DTGP's dismissal based on the statute of limitations is not an issue in this appeal.
[2] The specific statutory language is, "submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts."
[3] The terms and conditions under which DTGP communicated with Deloitte U.S. are not clear. In the affidavit of John Elliott, an executive vice-president of Gencor, he asserts that DTGP agreed with Deloitte U.S. to perform accounting and auditing services for both Gencor's fiscal 1998 quarterly and consolidated financial reporting process. He also asserts DTGP was aware this was for Gencor's use. Elsewhere, however, the record reflects that DTGP acted solely pursuant to its engagement with Gencor ACP.
[4] We do not suggest that these are true facts, only that these claims were not refuted in the jurisdictional filings and discovery.
[5] Florida courts also have enforced other types of contract clauses against non-signatories. See, e.g., Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, 778 So.2d 1089, 1090 (Fla. 4th DCA 2001); Terminix Int'l Co. v. Ponzio, 693 So.2d 104, 109 (Fla. 5th DCA 1997); Zac Smith & Co. v. Moonspinner Condo. Ass'n, 472 So.2d 1324, 1324 (Fla. 1st DCA 1985).
[6] Throughout the complaint, Gencor refers to Gencor ACP as being its "material wholly-owned subsidiary."