957 So.2d 98 (2007)
CITIGROUP INC. d/b/a Citigroup Private Bank, Citigroup Global Markets Inc., Susan Sofronas, Burt Hilton, Joel Yudenfreund, Doina Benac, and James Whelan, Appellants,
v.
Edward G. CAPUTO and EGC Trading LLC, Appellees.
No. 4D06-4646.
District Court of Appeal of Florida, Fourth District.
May 16, 2007.
Richard L. Martens of Casey Ciklin Lubitz Martens & O'Connell, West Palm Beach and Lawrence M. Hill, Adam J. Kaiser and Eric Laufgraben of Dewey Ballantine LLP, New York, New York, for appellants.
Jeven R. Sloan and David R. Deary of Deary Montgomery Defeo & Canada, LLP, Dallas, Texas, and William C. Wright of William C. Wright, P.A., West Palm Beach, for appellees.
HAZOURI, J.
Appellants, Citigroup Inc. d/b/a Citigroup Private Bank, Citigroup Global Markets Inc., Susan Sofronas, Burt Hilton, Joel Yudenfreund, Doina Benac, and James Whelan (collectively referred to as "Citigroup"), appeal from a non-final order denying their motion to dismiss a complaint for improper venue. The complaint was filed by Appellees, Edward G. Caputo (Caputo) and EGC Trading LLC (EGC). The crux of Citigroup's appeal is that an exclusive forum selection clause in the contract entered into by Caputo requires that all claims be adjudicated in New York and controls the venue for the claims asserted by Caputo. We agree and reverse.
*99 On October 31, 2005, Caputo and EGC filed suit in Palm Beach County against multiple defendants, including Citigroup. The complaint raises the following claims against all defendants: unjust enrichment, breach of fiduciary duty, fraud, negligence, negligent misrepresentation, breach of contract, declaratory judgment, and civil conspiracy. The claims against Citigroup arise out of Citigroup's alleged involvement in a scheme to promote, sell, and implement a tax-savings strategy (the "Strategy").[1] The complaint alleges that Citigroup entered into a secret arrangement with the other defendants under which Citigroup referred its clients, including Caputo, to the other defendants for participation in the Strategy. Caputo and EGC claim that Citigroup received a kickback of the fees paid to the other defendants in return for referring the clients.
Citigroup, Inc., a global financial services holding company, is the parent of numerous subsidiary corporations, including Citibank, N.A., which is Citigroup, Inc.'s primary bank subsidiary, and Citigroup Global Markets Inc., which is Citigroup, Inc.'s primary broker/dealer subsidiary. Prior to February 2001, following a merger with The Travelers Group, "Citigroup Private Bank," a trade name used to describe a suite of private banking services and products made available by Citibank, N.A. to its clients through its unincorporated Private Bank divisions, was referred to as "Citibank Private Bank." Since the merger, in connection with its private banking services, Citibank, N.A. does business as "Citigroup Private Bank."
Caputo and EGC allege the defendants initiated the subject scheme in early 2001 when Citigroup solicited Caputo to place his money with Citigroup Private Bank and told Caputo it would handle all of his financial needs. Shortly thereafter, Caputo joined the Citigroup Private Bank and entrusted it with the proceeds of the sale of his company. Citigroup contacted Caputo in mid-year 2001 and requested a meeting with him to discuss his year-end tax planning. Caputo claims Citigroup told him "there may be a way for him to legally avoid all or most of the tax obligations due on the sale of his company" and the best tax product was the "BDO/DGI strategy."
Caputo and EGC contend the defendants, including Citigroup, failed to disclose: (1) the existence and significance of Internal Revenue Service ("IRS") notices, published one year before the defendants promoted the Strategy to Caputo, indicating the IRS declared the Strategy illegal, (2) the fact that before Caputo filed any of his tax returns reflecting losses from the Strategy, the IRS sought information from one of the defendants that would identify clients like Caputo that participated in tax shelters like the Strategy, and (3) an IRS amnesty program allowing individuals and entities participating in the Strategy to disclose their participation and avoid liability for IRS penalties. Caputo and EGC allege that as a result of the defendants' actions regarding the Strategy, they incurred substantial penalties and interest.
Citigroup filed a motion to dismiss for improper venue pursuant to Florida Rule of Civil Procedure 1.140(b)(3). Citigroup argued that Caputo and EGC's relationship with Citigroup was governed by an Investor Agreement entitled "Citibank Investor Account Agreement between Citibank, N.A. and Edward Caputo" (the "Citibank Agreement"), and the Citibank Agreement contained an exclusive forum selection clause requiring that all claims against Citigroup be adjudicated in New York. Caputo and EGC filed a response in *100 opposition arguing that Citigroup failed to meet its burden of demonstrating that it was entitled to rely on the Citibank Agreement and that the claims against it arose "in connection" with the Citibank Agreement. Moreover, Caputo and EGC asserted if the Citibank Agreement did apply to Citigroup, the forum clause should not be enforced because it would violate Florida's public policy.
The relevant portions of the agreement read as follows:
General Definitions
Unless otherwise indicated in this Agreement, the words, "you", "your", and "yours" mean the applicant(s). The words "we", "us", and "our" mean Citibank, N.A. New York, 153 East 53rd St., New York, N.Y. 10043. The words "Affiliated Organization(s)" mean Citigroup, Citibank, N.A., their branches, subsidiaries, and affiliates, wherever located.
Governing Law/Jurisdiction/Jury Waver [sic]
This Agreement will be governed by the laws of the State of New York and by federal law as applicable. Any dispute in connection with this Agreement shall be adjudicated in a federal or state court located in the Borough of Manhattan, City and State of New York. You agree to submit to the jurisdiction of such courts for the determination of all issues in connection with this Agreement and irrevocably waive any objection to venue or inconvenient forum. You waive trial by jury in any such dispute.
The trial court issued an order denying Citigroup's motion to dismiss for improper venue, concluding:
Specifically, in this case it was incumbent upon the CITIGROUP Defendants to establish by a sworn proof, affidavit or otherwise, that: (1) the CITIGROUP Defendants take benefit from the agreement whether a party thereto or not; and (2) the dispute which is the subject matter of this litigation arose "in connection with" that agreement. The CITIGROUP Defendants have failed on both accounts. First the agreement clearly is between Citibank and not the Defendants in this case. The Agreement makes is [sic] clear that Citibank, N.A. and the Defendants in this case are separate entities. The affidavits filed in support does [sic] not change this determination. More importantly, however, although they could easily have done so, the CITIGROUP Defendants have failed to establish that the particular claims which give rise to this lawsuit, the [Strategy], in any way was covered by, connected with or in any way related to the "investment account" established by [Caputo] with Citibank, N.A. Notably absent from any affidavit is any statement to that effect. The specific allegations of the Complaint are to the contrary.
"[A]n appellate court reviews the interpretation of a contractual forum selection provision as a matter of law." Am. Boxing & Athletic Ass'n v. Young, 911 So.2d 862, 864 (Fla. 2d DCA 2005) (citations omitted). However, the trial court's decision was based in part on factual findings, such as whether Citigroup presented sufficient evidence of a forum selection agreement between it and Caputo. Thus, the standard of review applicable to the trial court's factual findings is whether they are supported by competent, substantial evidence. See Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1023 (Fla. 4th DCA 2005).
The trial court determined that Citigroup is not covered by the Citibank Agreement, concluding: "[T]he agreement clearly is between Citibank and not the Defendants in this case. The Agreement *101 makes is [sic] clear that Citibank, N.A. and the Defendants in this case are separate entities. The affidavits filed in support does [sic] not change this determination." Citigroup argues this was error because Caputo and EGC sued Citigroup "doing business as" the Citigroup Private Bank,[2] which is an "unincorporated business division of Citibank." Thus, Citigroup claims Caputo and EGC failed to acknowledge in their complaint and filings thereafter that "the real `Citi' party-in-interest is in fact `Citibank.'" (emphasis in original).
The trial court's conclusion that Citigroup is not covered by the Citibank Agreement is not supported by competent, substantial evidence. See Fonte, 903 So.2d at 1023. The only evidence submitted to the trial court shows that by suing "Citigroup, Inc. d/b/a Citigroup Private Bank," Caputo and EGC have in fact sued Citibank, N.A. The affidavit of Dana Sperling (Sperling), a Vice President of Citibank, N.A., submitted by Citigroup in support of its motion to dismiss, compels the conclusion that "Citigroup, Inc. d/b/a Citigroup Private Bank" is covered by the Citibank Agreement. As explained by Sperling,
I have reviewed the "Citibank Investor Account Agreement between Citibank, N.A. and Edward Caputo" signed by Edward G. Caputo. That Account Agreement is titled in bold, capital letters "The Citibank Private Bank." Prior to February 2001, Citigroup Private Bank was known as "Citibank Private Bank." The name was changed following Citicorp, Inc.'s merger with The Travelers Group.
Citigroup Private Bank is not an incorporated entity. "Citigroup Private Bank" is a brand/trade name used to describe a suite of private banking services and products made available by Citibank, N.A. to its clients through its unincorporated Private Bank divisions. In connection with its private banking services, Citibank, N.A. does business as, and is known colloquially as, "Citigroup Private Bank."
In essence, "The Citibank Private Bank," a party to the Citibank Agreement, and "The Citigroup Private Bank," listed in the caption of the complaint are the same entity. All that occurred between the time Caputo entered the Citibank Agreement and the time he filed this suit was a change in the Private Bank's name due to a merger with The Travelers Group.
Moreover, the complaint itself supports the conclusions in Sperling's affidavit. For example, the complaint alleges that "[s]hortly after Caputo was approached by the Citigroup Defendants, Caputo joined the Private Banking group of Citigroup and entrusted the proceeds from the sale of this company with them. The Citigroup Defendants assured Caputo that they would take care of him." Caputo refers to Citigroup as his financial advisor. Further, Caputo alleges his "decision to engage in the Strategy was also based in large measure on his relationship with the Citibank and C & L Defendants. . . ." The private banking group Caputo refers to in his complaint is the same entity with which he entered the Citibank Agreement, albeit with a different name. Also, the only relationship in this case between Caputo and any "Citi" entity arises out of the Citibank Agreement and clearly involves "Citigroup, Inc. d/b/a Citigroup Private Bank." Accordingly, Citigroup, as named in the complaint, is covered by the Citibank Agreement.
*102 Caputo and EGC argue in response that "[t]he Citibank Agreement makes it clear that Citigroup, Inc. (the Appellant) and Citibank (the signatory) are separate entities and that Citigroup has no rights or obligations under the Citibank Agreement." (emphasis in original). This argument fails. Caputo and EGC rely here on the "general definitions" provision in the Citibank Agreement, which they claim supports their conclusion that "[t]he Citibank Agreement sets out the rights, duties, and obligations of Citibank only" (emphasis in original) because it says "[t]he words `we', `us' and `our' mean Citibank, N.A." However, the forum selection clause does contain the word "we," "us," or "our." Moreover, Sperling's affidavit shows that the Citigroup Private Bank is an unincorporated business unit of Citibank, N.A., and merely the new name for the former Citibank Private Bank.
Even assuming Citigroup were not covered by the Citibank Agreement, a non-signatory may invoke a signatory's forum selection clause where the non-signatory and signatory are related. In World Vacation Travel, S.A., de C.V. v. Brooker, 799 So.2d 410 (Fla. 3d DCA 2001), the plaintiffs brought a claim against a signatory defendant arising out of an agreement containing a forum selection clause. The plaintiffs also alleged specifically that the non-signatory defendants breached terms of the same agreement. The Third District concluded:
[T]he [plaintiffs'] claims are not severable from the time-sharing agreement, and the claims arise solely out of the agreement. It logically follows that the mandatory nature of the forum selection clause of the time-sharing agreement equally applies to the non-signatory defendants due to the fact that the claims arise directly from the agreement, as well as due to the nature of the commercial relationship of the parties as it relates to the agreement itself.
Id. at 412-13. In the instant case, the nexus between Citibank, N.A. and Citigroup, doing business as Citigroup Private Bank, is much stronger than the one between the two entities in Brooker. "Citigroup" is expressly included as an "Affiliated Organization" in the Citibank Agreement, and Citigroup is being sued for doing business as Citigroup Private Bank. Therefore, under Brooker, Citigroup could avail itself of the forum selection clause even if it was not a signatory to the Citibank Agreement.
The trial court also determined that Citigroup "failed to establish that the particular claims which give rise to this lawsuit, the [Strategy], in any way was covered by, connected with or in any way related to the `investment account' established by [Caputo] with Citibank, N.A." The Citibank Agreement defines "Investment Advice" in pertinent part:
We may provide you, from time to time, with advice or information on investment opportunities regarding the following types of investments:
 company stocks and any type of debt instruments, including those managed, underwritten, or arranged by a[n] Affiliated Organization;
 warrants, depository receipts, and other types of instruments related to company stocks or debt instruments;
 mutual funds, or collective investment vehicles, including those managed, sponsored, or advised by an Affiliated Organization;
 structured notes;
 foreign exchange transactions;
 securities options, securities indices, currencies, or related derivative instruments;

*103  deposits, including those with Affiliated Organizations; and,
 any other similar or related investments.
Citigroup argues that the trial court erred in concluding that the claims in this case were not covered by the Citibank Agreement. We agree.
First, Caputo and EGC sued Citigroup, inter alia, for breach of contract. The Citibank Agreement, containing the forum selection clause, is the only contract between Caputo and a "Citi" entity.[3] Moreover, the fact that the complaint also raises tort claims does not change the forum selection clause analysis. See Deloitte & Touche v. Gencor Indus., Inc., 929 So.2d 678, 684 (Fla. 5th DCA 2006) (noting that analysis of forum selection clause does not change because a cause of action sounds in tort).
Second, the forum selection clause applies to "[a]ny dispute in connection with [the Citibank Agreement]" and the Citibank Agreement covers advice pertaining to the Strategy. The complaint alleges: "The [Strategy] was a tax strategy where a taxpayer purchases and sells options and transfers these options positions to a limited liability company that is also owned by the client." The options at issue were options in the NASDAQ 100 Index. Moreover, the complaint alleges: "The DGI, Alpha and Citigroup Defendants advised and instructed Caputo to buy and sell [options] on the NASDAQ 100 INDEX and the exact amounts to be invested in each option." Thus, because the Citibank Agreement specifically covers advice pertaining to "securities options, securities indices, currencies, or related derivative instruments," a dispute concerning advice pertaining to the Strategy is "in connection with" the Citibank Agreement.
Caputo and EGC argue in response that the "investment advice" at issue here is not the same "advice" contemplated by the Citibank Agreement because "the Citibank Agreement only covers advice given by `We', which is defined to specifically exclude Citigroup!" (emphasis in original). This argument is without merit because, as explained above, Citigroup as named in the complaint, is covered by the Citibank Agreement.
Caputo and EGC also contend that the focus of their claims against Citigroup concerns their participation in an alleged conspiracy to market a fraudulent tax shelter, not advice covered by the Citibank Agreement. This argument also fails. Both Caputo's affidavit and the complaint allege repeatedly that Citigroup advised Caputo with regard to the Strategy. As explained previously, this advice necessarily involved matters covered by the Citibank Agreement.
Finally, Caputo claims the forum selection clause is limited to disputes in connection with "investments and activity through the `Citibank Investor Account.'" The only support for this proposition is the trial court's order. The Citibank Agreement is not limited to activities concerning the Investor Account. It covers a broader range of investment advice, including advice concerning options like those involved in the Strategy. Therefore, the claims in this case are covered by the Citibank Agreement.
*104 Based on the foregoing, we reverse and remand with directions to the trial court to dismiss this case for improper venue. Notably, the trial court did not reach the issue of whether EGC was bound under the forum selection clause because it ruled that Citigroup could not enforce it. However, we direct the trial court to dismiss the entire case against Citigroup for improper venue, including the claims asserted by EGC. Although EGC has no contract with Citigroup, EGC is an entity created by Caputo solely for the purpose of executing the Strategy. Moreover, although EGC is a non-signatory to the Citibank Agreement, it is bound under the forum selection clause because of its close relationship with Caputo. See Deloitte & Touche, 929 So.2d at 683-84.
Reversed and Remanded with Directions.
WARNER and POLEN, JJ., concur.
NOTES
[1] Caputo created EGC for the purpose of executing the Strategy.
[2] Citigroup mistakenly asserts throughout its brief that Caputo sued Citigroup "doing business as" Citibank Private Bank. Caputo sued Citigroup "doing business as" Citigroup Private Bank.
[3] Caputo and EGC claim they alleged in their complaint that they entered into an "oral" contract with Citigroup. However, this misconstrues the complaint. Rather, as Citigroup notes, the complaint contains one vague allegation that "plaintiffs entered into oral and/or written contracts with Defendants." Further, a footnote in ¶ 86 of the complaint states: "No claims are asserted herein under any written agreement with EGC Investments 2001 LLC." There is no such statement with respect to Citigroup.