822 So.2d 1252 (2002)
Bernard WENDT, Petitioner,
v.
Marvin HOROWITZ, et al., Respondents.
No. SC00-389.
Supreme Court of Florida.
June 13, 2002.
*1253 Robert E. Austin, Jr., Bradford D. Fisher, and Reda J. Stewart of Austin & Pepperman, Leesburg, FL, for Petitioner.
Dale T. Golden and Michael J. McGirney of Marshall, Dennehey, Warner, Coleman & Goggin, Tampa, FL, for Respondents.
PARIENTE, J.
We have for review Horowitz v. Laske, 751 So.2d 82 (Fla. 5th DCA 1999), a decision from the Fifth District Court of Appeal that expressly and directly conflicts with the Fourth District Court of Appeal's decisions in Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994), and Carida v. Holy Cross Hospital, 424 So.2d 849 (Fla. 4th DCA 1982), overruled on other grounds in Doe v. Thompson, 620 So.2d 1004 (Fla.1993).[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The conflict issue presented in this case is whether making telephonic, electronic, or written communications into this State can constitute "committing a tortious act" within Florida to subject a nonresident defendant to personal jurisdiction under section 48.193(1)(b), Florida Statutes (1999), of Florida's long-arm statute. For the reasons that follow, we hold that "committing a tortious act" within Florida under section 48.193(1)(b) can occur by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications.[2]

*1254 BACKGROUND
Because this case arises from a motion to dismiss for lack of personal jurisdiction, we derive the facts from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss. See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502-03 (Fla.1989). Beginning in 1993, K.D. Trinh Investments, Inc. ("K.D. Trinh"), a Canadian corporation, held itself out as specializing in the purchase and quick sale of food products. K.D. Trinh derived capital for its operation from short term, high interest loans made almost exclusively to K.D. Trinh by Florida residents through independent agents who brokered the loans from Florida.
Initially, Alexander Legault was president of K.D. Trinh. At that time, Loren ("Ray") Reynolds was a salaried K.D. Trinh employee in charge of raising capital in Florida and enlisting independent agents who were Florida residents. Reynolds was a Florida resident, domiciled in Florida, and worked for K.D. Trinh from Florida. Moreover, George Hermann and his company, H & R Financial Services, Inc. (collectively "Hermann"), and petitioner Bernard Wendt served as resident agents who solicited investors. Hermann also was a Florida resident who was domiciled in Florida.
K.D. Trinh retained respondent Marvin Horowitz, a Michigan attorney, and his law firm, Horowitz & Gudeman, P.C., a Michigan law firm, as outside counsel to advise it on a number of matters pertaining to the sale of its notes and other securities matters in the United States, including Florida. Horowitz revised and drafted the notes and certificates used by K.D. Trinh for loans from Florida residents, allegedly to conform to federal and Florida securities law. Horowitz advised K.D. Trinh and Florida investors that the notes and certificates were not securities under federal and Florida law, and that K.D. Trinh's agents were not required to be licensed securities brokers within the State of Florida to legally offer the loans evidenced by those instruments. Moreover, Horowitz advised that, even if the notes and certificates were deemed to be securities, they were exempt from registration under section 517.051(8) or section 517.061(11)(a), Florida Statutes (1993), or both.
On June 13, 1994, Lynn Chang, an investigator with the Office of Comptroller, Department of Banking and Finance of the State of Florida, wrote Hermann concerning "certain investments which may be `securities' under Section 517.921, Florida Statutes," and inquired whether K.D. Trinh was relying on an exemption or if it anticipated registration of the securities. Hermann contacted Reynolds, who told Hermann to contact Legault. Legault sent Horowitz the letter from the Office of the Comptroller, and Horowitz called Hermann in Florida and assured him that he would take care of the investigation. Horowitz was involved in two separate investigations by the State of Florida for K.D. Trinh.
Investors Edward and Ruth Laske, individually and on behalf of similarly situated individuals, filed a class action lawsuit against Wendt. The lawsuit alleged that Wendt acted as a broker and a promoter for the sale of K.D. Trinh notes, which turned out to be worthless. The lawsuit claimed that the sale of these notes violated securities laws. Wendt filed a third-party complaint, and then an amended third-party complaint, against several parties, including Horowitz and his law firm. Wendt claimed that he relied to his detriment on legal advice Horowitz had given.
*1255 To establish personal jurisdiction over Horowitz as a nonresident defendant, Wendt's amended third-party complaint alleged that jurisdiction was proper under section 48.193(1)(a), (1)(b), and (1)(f)(1), Florida Statutes (1999).[3]See Horowitz, 751 So.2d at 85. Specifically, regarding section 48.193(1)(b) Wendt alleged jurisdiction was proper concerning Horowitz because Horowitz:
Committed a tortious act in Florida by (1) negligently responding in writing to an investigation by the Division of Securities relating to the alleged sale of unregistered securities and (2) negligently drafting loan documents that were knowingly intended by him to be evidence of loans to be made by Florida residents to K.D. Trinh without appropriate consideration being given to Florida securities laws and restrictions on allowable interest, all of which resulted in Florida residents' sustaining personal injuries and monetary losses and being subjected to administrative, civil, and criminal proceedings.[4]
Id. at 84. Horowitz moved to dismiss for lack of personal jurisdiction and filed an affidavit in support of his motion. See id. The affidavit stated:
[H]e was a resident of the State of Michigan; was duly licensed to practice law in Michigan; had never been a resident of the State of Florida; had never solicited or conducted personal business within the State of Florida; his contacts with any party or entity in the State of Florida had been on behalf of a client or employer and those contacts had only involved telephonic or mail correspondence and never involved travel to Florida; that he had not traveled to Florida within the past eight years; he had never knowingly received any compensation directly from a Florida resident or entity or a non-Florida resident or entity while that party was in Florida.
Id. (emphasis supplied).
After a hearing on Horowitz's motion to dismiss, Wendt submitted materials, including deposition transcripts, for the trial court to consider in making its ruling. See id. These transcripts and records revealed that Horowitz had some contact with parties and entities in Florida during 1994 and 1995 based on the two inquires made by the State regarding whether K.D. Trinh was selling unregistered securities. See id. at 85. These materials also indicated that Horowitz prepared certain loan *1256 documents for K.D. Trinh, which K.D. Trinh then used in Florida. See id. Horowitz's contacts regarding the first state inquiry, which arose in mid-1994, included:
[A] letter on June 17, 1994 from Horowitz to George Hermann, a Florida-based K.D. Trinh broker, reassuring Hermann regarding the State's inquiry into the nature of the K.D. Trinh notes; a phone call from Horowitz to Hermann on June 20, 1994; a letter on July 7, 1994, to Lynn Chang, an investigator for the Florida Department of Banking and Finance, regarding the State's inquiry into K.D. Trinh; and some follow-up phone calls of this same nature to Lynn Chang.
Id. The contacts as to the second State inquiry, which arose in 1995, consisted of:
[A] series of brief letters and phone calls as to this inquiry, primarily to Marsha Perkins, a financial investigator in the Office of the Comptroller for the state. Horowitz made one phone call to Wendt regarding this second inquiry in March, 1995. Also, at K.D. Trinh's request, Horowitz reviewed a subpoena Wendt received from the state during this second inquiry.
Id.
The trial court denied Horowitz's motion to dismiss for lack of personal jurisdiction without indicating which specific section of the long-arm statute was applicable. See id. Horowitz appealed to the Fifth District, which reversed and remanded. See id. at 86. The Fifth District held that jurisdiction was improper under either section 48.193(1)(a) or section 48.193(1)(b).[5]See id. at 85. Regarding the application of section 48.193(1)(a), the Fifth District held that "[b]rief phone calls and letters initiated in Michigan and performed wholly in Michigan, and the preparation of loan documents, all done on behalf of a Canadian client doing business in Florida, does not amount to a general course of business activity in Florida by Horowitz." Id. The Fifth District also held that the affidavit Horowitz filed in support of his motion to dismiss refuted the allegations made in the third-party first amended complaint. See id. at 86.
Moreover, the Fifth District held that personal jurisdiction was not proper under section 48.193(1)(b), because no tortious act was committed in Florida. See id. The Fifth District explained that the "tortious acts" alleged in the complaint were the negligent response to the State of Florida regarding the sale of K.D. Trinh's unregistered securities and the negligent drafting of loan documents for use by K.D. Trinh, a Canadian corporation, for use in its Florida business. See id. The Fifth District concluded that these acts, if committed at all, were committed in Michigan. See id. Therefore, because the Fifth District held that Wendt failed to meet his burden of establishing jurisdiction under Florida's long-arm statute, the Fifth District did not address the second inquiry as to whether "sufficient minimum contacts" had been demonstrated to alleviate due process concerns. Id.

DISCUSSION
This Court must conduct a de novo review of a trial court's ruling on a motion to dismiss for lack of personal jurisdiction. See Execu-Tech Bus. Sys., Inc. v. New Oji *1257 Paper Co., 752 So.2d 582, 584 (Fla.2000), cert. denied, 531 U.S. 818, 121 S.Ct. 58, 148 L.Ed.2d 25 (2000). This Court has articulated a two-step inquiry for determining whether long-arm jurisdiction over a nonresident defendant in a given case is proper:
First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
The first prongi.e., the statutory prongof the Venetian Salami standard is governed by Florida's long-arm statute and bestows broad jurisdiction on Florida courts. A court can exercise personal jurisdiction, inter alia, whenever a foreign corporation commits a "tortious act" on Florida soil. The second prongi.e., the constitutional prongis controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement. A court can exercise personal jurisdiction only if the foreign corporation maintains "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
Id. (citations and footnote omitted).
At issue in this case is the first prong that is, whether Wendt's complaint alleges sufficient jurisdictional facts to satisfy section 48.193(1)(b). Wendt asserts that jurisdiction over Horowitz is proper under section 48.193(1)(b), which confers personal jurisdiction over parties that commit a "tortious act" in Florida. Section 48.193(1)(b) provides:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: ...
(b) Committing a tortious act within this state.
Specifically, Wendt alleges that Horowitz committed two "tortious acts" within the state. First, he alleges that Horowitz negligently responded in writing to an investigation by the Florida Division of Securities relating to the alleged sale of unregistered securities. Second, Wendt alleges that Horowitz negligently drafted loan documents that Horowitz knowingly intended to be evidence of loans to be made by Florida residents to K.D. Trinh without giving appropriate consideration to Florida securities laws and restrictions on allowable interest, all of which resulted in Florida residents sustaining personal injuries and monetary losses and being subjected to administrative, civil, and criminal proceedings.
Horowitz does not deny that he sent letters to Florida in response to an investigation by the Florida Division of Securities or that he drafted loan documents intended for use in Florida. Rather, he claims that neither action constitutes "committing a tortious act" in Florida.
At the outset, we distinguish the question of whether communications into Florida can constitute "committing a tortious act" for the purposes of Florida's long-arm statute from the question of whether those acts may satisfy the minimum contacts required to comply with the constitutional prong of Venetian Salami. There is no question that physical presence is not necessarily required to satisfy *1258 the constitutionally mandated requirement of minimum contacts. See Execu Tech, 752 So.2d at 586; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."). As the United States Supreme Court has observed in dealing with the constitutional issue of minimum contacts in relation to interstate communications:
[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.
Burger King, 471 U.S. at 476, 105 S.Ct. 2174 (citations omitted).
The question presented in this case is whether making telephonic, electronic, or written communications into Florida from outside of the State can constitute "committing a tortious act" under section 48.193(1)(b). The Fourth District has held that physical presence is not required in order to establish personal jurisdiction under section 48.193(1)(b). For example, in Carida, 424 So.2d at 851, the plaintiff, a Florida resident, asserted that the nonresident defendant committed a tortious act in Florida by virtue of his slanderous telephone conversations made to the plaintiff. The Fourth District held that committing a tortious act under section 48.193(1)(b) did not require that a physical tort occur in this State. See id. Similarly, in Silver, 648 So.2d at 241, the mailing of a letter into Florida from an out-of-state defendant formed the basis for a defamation claim. The Fourth District concluded that because the tort of libel was not completed until the statements were published, the mailing of the letter into Florida constituted the commission of a tortious act in Florida. See id. at 242.
In Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 718 (Fla. 4th DCA 1998), the plaintiff alleged that the nonresident defendant had defamed it by making statements to "distributors in Palm Beach County and elsewhere that Achievers is not a good company and that Achievers has been selling products on the side directly to retailers." The defendant did not contest that he made the statements to distributors in Palm Beach County, or that the statements, if made, would establish the tort of defamation. See id. In reversing the trial court's order of dismissal, the Fourth District held that "[m]aking a defamatory statement to a listener in Florida, even via telephone" constitutes the commission of a tortious act for purposes of section 48.193(1)(b). Id.
More recently, in Acquadro, 778 So.2d at 1035, the plaintiff alleged that the two defendants, while in Massachusetts, engaged in telephone conversations with persons in Florida, during which one of the defendants allegedly defamed the plaintiff and both defendants made statements that formed the basis of claims for false arrest and malicious prosecution. The Fourth District concluded that the trial court properly denied the motion to dismiss because the defendants did not deny that the telephone conversations occurred and that these telephone conversations formed the basis for personal jurisdiction. Id. The Fourth District did not decide whether the defendant had committed the torts alleged, because that would have required a fullblown trial, not the limited evidentiary *1259 hearing contemplated by Venetian Salami Co. See Acquadro, 778 So.2d at 1035.
In a slightly different twist, in Koch v. Kimball, 710 So.2d 5, 6 (Fla. 2d DCA 1998), the Second District was confronted with a jurisdictional question involving a nonresident defendant who tape-recorded a telephone call placed to the plaintiff in Florida. The plaintiff claimed a violation of the Florida Security of Communications Act. See id. The Second District held that the tortious act occurred in Florida where the interception occurred because that is where the recorded communication was uttered, and thus, the out-of-state defendant was subject to personal jurisdiction under section 48.193(1)(b). See id.[6]
The Fifth District has taken a more restrictive view of "committing a tortious act" to establish personal jurisdiction under section 48.193(1)(b), suggesting that a nonresident defendant must be physically present to commit a tortious act. For example, in McLean Financial Corp. v. Winslow Loudermilk Corp., 509 So.2d 1373, 1374 (Fla. 5th DCA 1987), the Fifth District held that making fraudulent representations in Virginia by telephone to a Florida resident was insufficient to establish jurisdiction under section 48.193(1)(b). See also Intercontinental Corp. v. Orlando Reg'l Med. Ctr., 586 So.2d 1191 (Fla. 5th DCA 1991) (holding that the "mere act of communicating with the promisee in Florida, in an effort to convince the promisee not to insist on contractual rights, does not constitute commission of a tortious act in this state").
This Court recently addressed the application of section 48.193(1)(b) to a nonresident defendant who was not physically present in Florida in Execu-Tech, 752 So.2d at 582. In Execu-Tech, a Florida company filed a class action lawsuit in Florida against a Japanese company that manufactured and sold thermal fax paper, alleging that the Japanese company conspired with others, including Florida corporations, to fix the wholesale price of the paper. Id. at 582. The Japanese company asserted that the Florida court lacked personal jurisdiction because it sold thermal fax paper only in Japan, it did not maintain an office in Florida, and the plaintiff failed to show that any of the Japanese company's paper was sold in Florida during the class period. See id. at 584. The trial court granted the motion to dismiss and the district court affirmed.
This Court reversed, holding that the Florida company's "complaint alleged sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute." Id. at 585. The Court explained that the complaint alleged that the Japanese company deliberately conspired with others to fix the wholesale price of their product throughout the United States, including Florida, which constituted a violation of the Florida Deceptive and Unfair Trade Practices Act. See id. Thus, the Court held that "according to ... the complaint, [the Japanese company] and the other conspirators committed a tortious act (i.e., a violation of the Act) on Florida soil and subjected themselves to the jurisdiction of Florida courts." Id. Because in *1260 Execu-Tech the defendant was not physically present in Florida, implicit in Execu-Tech is the notion that physical presence in Florida is not required to "commit a tortious act" in Florida under section 48.193(1)(b).
What was implicit in Execu-Tech we now make explicit. First, in order to "commit a tortious act" in Florida, a defendant's physical presence is not required. Second, "committing a tortious act" in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications. This predicate finding is necessary because of the connexity requirement contained in section 48.193(1).[7]See § 48.193(1) (stating that "[a]ny person ... who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts").
Although we hold that telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications, we expressly do not determine whether personal jurisdiction under section 48.193(1)(b) has been established in this case. The threshold question that must be determined is whether the allegations of the complaint state a cause of action. Cf. 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co., 638 So.2d 149, 151 (Fla. 4th DCA 1994) (where the threshold question of personal jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated); Silver, 648 So.2d at 241 (same). If the complaint does state a cause of action, then it must be determined whether the alleged cause of action arises from these communications.[8]
We thus quash the Fifth District's decision to the extent that it concludes that physical presence is required to establish personal jurisdiction under section 48.193(1)(b). We also disapprove of McLean Financial Corp. and Intercontinental Corp. to the extent that these decisions are inconsistent with this opinion and our holding in Execu-Tech. We remand this case for further proceedings consistent with this opinion.
It is so ordered.[9]
ANSTEAD, LEWIS, and QUINCE, JJ., concur.
*1261 WELLS, C.J., dissents with an opinion, in which HARDING, J., concurs.
SHAW, J., dissents.
WELLS, C.J., dissenting.
I respectfully dissent.
First, I would discharge jurisdiction. I conclude that the cited conflict cases, Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994); Carida v. Holy Cross Hospital, 424 So.2d 849 (Fla. 4th DCA 1982), overruled on other grounds by Doe v. Thompson, 620 So.2d 1004 (Fla.1993) (the latter statement being made in this case by the majority); and Acquadro v. Bergeron, 778 So.2d 1034 (Fla. 4th DCA), review granted, 797 So.2d 584 (Fla.2001), are distinguishable and do not expressly and directly conflict with Horowitz v. Laske, 751 So.2d 82 (Fla. 5th DCA 1999), as article V, section 3(b)(3) of the Florida Constitution requires for this Court to accept jurisdiction. Libelous and slanderous expressions allegedly conveyed over the telephone or through the mails, the issues involved in Silver, Carida, and Acquadro, are plainly different from the lawyer malpractice which is the tortious act alleged in the instant complaint.
Second, I find nothing in the Fifth District's opinion which even suggests a holding that "physical presence" in Florida is required to commit a tortious act. The totality of the Fifth District's discussion of whether a tortious act was committed in Florida is as follows:
The "tortious acts" alleged here, negligently responding to the state of Florida regarding the sale of K.D. Trinh's unregistered securities and negligently drafting loan documents for use by K.D. Trinh, a Canadian corporation, for use in its Florida business activities, were not committed in the state of Florida as required by the plain language of the statute. Rather, if committed at all, these acts were committed in Michigan.
Horowitz, 751 So.2d at 86 (citations omitted). Therefore, I do not agree with quashing the Fifth District's opinion "to the extent that it concludes that physical presence is required to establish personal jurisdiction under section 48.193(1)(b)." Majority op. at ____. Moreover, I also conclude that such a holding is not found in Intercontinental Corp. v. Orlando Regional Medical Center, 586 So.2d 1191 (Fla. 5th DCA 1991). I see no reason to disapprove that decision.
Finally, as this case has not been discharged for want of express and direct conflict, I would approve the decision of the Fifth District under review. I read nothing in the majority opinion precluding the Fifth District from engaging in the same analysis upon remand, and it appears to me that the same result will be reached upon remand.
Accordingly, I respectfully dissent.
HARDING, J., concurs.
NOTES
[1] Subsequent to our acceptance of jurisdiction in this case, the Fourth District decided Acquadro v. Bergeron, 778 So.2d 1034 (Fla. 4th DCA), review granted, 797 So.2d 584 (Fla. 2001), which also is in conflict with the Fifth District's decision in this case. We have accepted review in Acquadro.
[2] We do not decide the broader issue of whether injury alone satisfies the requirement of section 48.193(1)(b), as that issue is not the basis for this Court's jurisdiction. However, we note that the federal courts that have addressed this issue, although acknowledging the confusion among Florida's district courts, have adopted a broad construction of section 48.193(1)(b), holding that the commission of torts out of state that cause an injury to an instate resident satisfies Florida's long-arm statute. See, e.g., Posner v. Essex Ins. Co., 178 F.3d 1209, 1216-17 (11th Cir.1999); Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 257 (11th Cir.1996); Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1033-34 (11th Cir.1991); Bangor Punta Operations, Inc. v. Universal Marine Co., 543 F.2d 1107, 1109 (5th Cir.1976); Rebozo v. Washington Post Co., 515 F.2d 1208, 1211-12 (5th Cir.1975); Hollingsworth v. Iwerks Entm't, Inc., 947 F.Supp. 473, 478 (M.D.Fla.1996); Interfase Mktg., Inc. v. Pioneer Techs. Group, Inc., 774 F.Supp. 1355, 1357 (M.D.Fla.1991).
[3] Section 48.193(1)(a), (1)(b), and (1)(f)(1), Florida Statutes (1999), provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business venture in this state or having an office or agency in this state.
(b) Committing a tortious act within this state....
(f) Causing injury to persons or property in this state arising out of an act or omission by the defendant outside the state, if, at or about the time of the injury, either:
1. The defendant was engaged in solicitation or service activities within this state....
[4] Moreover, in order to establish personal jurisdiction over Horowitz & Gudeman, P.C., Wendt's amended third-party complaint alleged:

Horowitz-Gudman is a Michigan professional corporation which through its agent Horowitz held itself out as a law firm knowledgeable in commercial and securities laws and which through its agent Horowitz engaged in the activities and committed the acts described in paragraph 4 hereof.
[5] The parties agreed in the Fifth District that jurisdiction in this case turns upon either section 48.193(1)(a) or 48.193(1)(b). See Horowitz, 751 So.2d at 85. Therefore, the jurisdictional allegations referring to section 48.193(1)(f)(1) were not discussed by the Fifth District, and we decline to address the application of section 48.193(1)(f)(1) in this opinion.
[6] However, in Texas Guaranteed Student Loan Corp. v. Ward, 696 So.2d 930, 932 (Fla. 2d DCA 1997), the Second District held that sending debt collection letters and making phone calls from out of state to a Florida resident is insufficient to establish jurisdiction under section 48.193(1)(b). The Second District did not consider whether the cause of action alleged arose from sending the debt collection letters and making phone calls. We note that in dicta in Texas Guaranteed, the Second District stated that injury alone does not satisfy section 48.193(1)(b), whereas in Koch, the Second District conversely stated that injury alone does satisfy section 48.193(1)(b).
[7] This is in contrast to the general jurisdiction statute, section 48.193(2), Florida Statutes, which does not require connexity between the defendant's activities and the cause of action. See Woods v. Nova Companies Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999).
[8] Although Wendt's complaint alleged causes of action against both Horowitz and his law firm, the Fifth District's decision appears to have treated them collectively for purposes of its personal jurisdiction analysis. Moreover, the parties in this case have not argued before this Court that a distinction should be made between the satisfaction of personal jurisdiction under section 48.193(1)(b) for Horowtiz's alleged acts and the law firm's alleged acts. Therefore, just as we do not reach the issue of whether personal jurisdiction is satisfied for Horowitz's alleged acts, we also do not reach the issue of whether personal jurisdiction is satisfied for the law firm's alleged acts, which personal jurisdiction apparently would be based on the allegedly tortious acts of its agent.
[9] We decline to address the other issues raised by the parties because these issues are not the basis for our conflict jurisdiction. See Florida Power & Light v. City of Dania, 761 So.2d 1089, 1094 n. 11 (Fla.2000).