949 So.2d 228 (2007)
Michael HUNT and Hippo Holdings Ltd., Appellants,
v.
CORNERSTONE GOLF, INC., John Daly Enterprises, Inc., John Daly, an individual, and Hippo Golf Company, Inc., Appellees.
No. 4D06-1920.
District Court of Appeal of Florida, Fourth District.
January 3, 2007.
Rehearing Denied March 19, 2007.
*229 Frederick H.L. McClure and S. Douglas Knox of DLA Piper Rudnick Gray Cary U.S. LLP, Tampa, and Carol A. Witschel of White & Case LLP, New York, New York, for appellants.
Thomas A. Dye of Carlton Fields, P.A., West Palm Beach, for appellee Cornerstone Golf, Inc.
POLEN, J.
Appellant Michael Hunt ("Hunt") timely appeals a non-final order denying his motion to dismiss for lack of personal jurisdiction. Hippo Holdings, Ltd. ("Hippo"), of which Hunt is part owner, successfully moved to join Hunt's appeal on Hunt's behalf pursuant to Florida Rule of Appellate Procedure 9.360(a).[1] We find that the state of Florida lacks personal jurisdiction over Hunt as regards this dispute, and therefore reverse the trial court's non-final order and instruct the court to dismiss Cornerstone Golf, Inc.'s ("Cornerstone") tortious interference complaint against Hunt.
An appellate court must conduct a de novo review of a trial court's ruling on a motion to dismiss for lack of personal jurisdiction. Wendt v. Horowitz, 822 So.2d 1252, 1256 (Fla.2002).
This case arose because it was alleged that John Daly ("Daly"), a golfer and resident of Tennessee, granted two different companies, Cornerstone, a Georgia corporation, and Hippo, a British corporation, the exclusive rights to use his name, likeness and signature in connection with the advertising and sale of golf merchandise, during overlapping time periods. The conflict allegedly occurred because, at the same time that Daly's agent was negotiating an exclusive trademark license agreement with Hippo, and unknown to Hippo, Mark Chamberland, on behalf of John Daly Enterprises ("JDE"), a Florida corporation, was negotiating an exclusive trademark license with Cornerstone.
Approximately six months before Cornerstone's trademark rights were scheduled to expire, JDE terminated its contract with Cornerstone. Cornerstone proceeded to file a complaint against JDE, Daly, Hippo, Hippo's subsidiary in California, and Hunt, as an individual. The complaint alleged, inter alia, that Hunt, a resident of England, tortiously interfered with Cornerstone's exclusive trademark license rights through a series of emails and telephone calls which he made into the state of Florida. These communications consisted of two emails and various phone calls from Hunt to JDE, which Cornerstone now argues conferred personal jurisdiction over Hunt upon courts of this state.
*230 Florida has a two-step inquiry for determining whether there is long-arm jurisdiction over a nonresident defendant in Florida. First, a court must determine whether the plaintiff's complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. Wendt, 822 So.2d at 1257. Second, it must determine whether there are sufficient minimum contacts between the defendant and Florida to satisfy the Fourteenth Amendment's due process requirements. Id.; see also Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).
Cornerstone alleges a statutory basis for jurisdiction under section 48.193(1)(b), Florida Statutes (2006), which states:
Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
. . . .
Committing a tortious act within this state.
The determinative issue for this court is not whether Cornerstone has proven that tortious interference actually occurred, but rather whether the tort, as alleged, occurred in Florida. See Seabra v. Int'l Specialty Imports, Inc., 869 So.2d 732, 733 (Fla. 4th DCA 2004) ("In determining whether a Florida court has personal jurisdiction over a nonresident . . . the court must [first] consider whether the complaint alleges sufficient jurisdictional facts to bring the action within the control of Florida's long-arm statute"); see also Acquadro v. Bergeron, 778 So.2d 1034 (Fla. 4th DCA 2001) ("In the present case the trial court did hold an evidentiary hearing, but the purpose was not, as the court correctly recognized, to resolve whether the defendants had committed the torts. That would have required a full-blown trial, not the limited evidentiary hearing contemplated by Venetian Salami.").
Hunt's relevant contacts with Florida, as noted above, include telephone calls and two emails to Chamberland in which Hunt discussed JDE's contract with Cornerstone. Although Hunt never physically entered Florida, Wendt held that "committing a tortious act" in Florida under section 48.193(1)(b) can occur through a nonresident defendant's telephonic, electronic or written communications into Florida, the physical presence of the defendant not being required. Wendt, 822 So.2d at 1260. However, Wendt further held that "the cause of action must arise from the communications . . . because of the connexity requirement contained in section 48.193(1)." Id. In the instant case, we find that Hunt's communications into Florida did not give rise to a cause of action against him for tortious interference with Cornerstone's business relationship with JDE. Hunt initially sent correspondence to Daly's agent in Washington, D.C., as well as to Daly himself in Tennessee, relating Hippo's desire that it hold the rights to the John Daly trademark exclusive of all other companies, including Cornerstone. The emails and telephone calls which Hunt sent to Chamberland in Florida took place after Hunt sent these communications. Therefore, any claim for tortious interference should be made where those initial communications took place, rather than Florida. Furthermore, the second email from Hunt to Chamberland, in which Hunt thanked JDE for terminating its contract with Cornerstone, was sent a week after JDE terminated the contract and is therefore irrelevant to this analysis. As such, we find *231 that Cornerstone has failed to allege sufficient jurisdictional facts to bring this cause of action within the control of Florida's long-arm statute.[2]See Seabra, 869 So.2d at 733.
Reversed.
KLEIN and MAY, JJ., concur.
NOTES
[1] Florida Rule of Appellate Procedure 9.360(a) states that "[a] party to the cause in the lower tribunal who desires to join in a proceeding as a petitioner or appellant shall file a notice to that effect within 10 days of service of the petition or notice or within the time prescribed by rule 9.110(b), whichever is later."
[2] Due to our holding regarding lack of long-arm jurisdiction, we do not address whether there are sufficient minimum contacts between Hunt and Florida to satisfy the Fourteenth Amendment's due process requirements. See Wendt, 822 So.2d at 1257.