PER CURIAM.
Defendant, Dani Siegel, a non-resident limited partner in a Florida limited partnership, appeals the denial of his motion to dismiss for lack of personal jurisdiction. We affirm because plaintiffs have adequately alleged that Siegel personally committed a tortious act within the state. Moreover, he should reasonably have anticipated that a dispute might arise within the Florida limited partnership which would require that he be haled into a Florida court.
*1274 Harbor Inn of CS Associates, Ltd. is a Florida limited partnership which has owned an apartment building in South Florida for nearly fifteen years. The limited partnership agreement provides that Florida law shall apply to disputes arising under the limited partnership agreement. Plaintiff, M.S.L. Property Management, Inc. (“MSL”), is the general partner. Plaintiffs Paul and Deane Marcus are limited partners. Defendant Siegel is a limited partner with a 19.80 % ownership interest in the limited partnership. Siegel resides in New York.
In August 2005, all of the limited partners except the Marcuses voted in favor of a sale of the apartment building owned by the limited partnership. Under the terms of the limited partnership agreement, the Marcuses had a right of first refusal. However, once it became clear that the Marcuses were going to exercise that right, four of the limited partners with a controlling interest (including defendant Siegel), rescinded their votes in favor of selling the property. The Marcuses filed the instant suit alleging that Siegel and the other rescinding limited partners participated in a conspiracy to breach their fiduciary duties by their joint rescission of the votes to sell the apartment building.
According to Siegel’s affidavit, his only discussion about the rescission was with another limited partner, Murray Liebow-itz.[1] The discussion between Siegel and Liebowitz occurred in Massachusetts. Sie-gel’s rescission vote was sent to the general partner, MSL, located in Florida, in accordance with the governing terms of the limited partnership agreement. Based upon these undisputed facts, the trial court denied Siegel’s motion to dismiss for lack of personal jurisdiction.
We must conduct a de novo review of a ruling on a motion to dismiss for lack of personal jurisdiction. Wendt v. Horowitz, 822 So.2d 1252, 1256 (Fla.2002). The Florida Supreme Court has articulated a two-step inquiry for deciding whether personal jurisdiction exists:
First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the [long-arm] statute; and if it does, the next inquiry is whether sufficient “minimum contacts” are demonstrated to satisfy due process requirements.
Id. at 1257.

The Long-Arm. Statute

Section 48.193(l)(b), Fla. Stat. (2007), extends long-arm jurisdiction to defendants who commit a tortious act within the State of Florida. In order to “commit a tortious act” in Florida, a defendant’s physical presence in the state is not required. Id. at 1260. Rather “committing a tortious act” can occur through the nonresident’s “telephonic, electronic or written communications into Florida,” so long as the cause of action arises from the communications. Id. It is sufficient that a “substantial portion” of the tortious acts occurred in Florida. See Machtinger v. Inertial Airline Servs., Inc., 937 So.2d 730, 735 (Fla. 3d DCA 2006). The fact that the subject rescission vote was transmitted to, and registered in, the State of Florida, according to the governing terms of the limited partnership agreement, is sufficient to satisfy the long-arm statute.
Siegel points to case law holding that limited partners are not subject to long-arm jurisdiction simply by virtue of the actions of the limited partnership. See Renda v. Peoples Fed. Sav. & Loan Ass’n. *1275 of Tarentum, Pennsylvania, 538 So.2d 860, 863 (Fla. 1st DCA 1988). We agree with this principle. However, Siegel is not being sued by a third party on account of the actions of the limited partnership as an entity. Rather, he is being sued on account of his own personal actions within the partnership.

Due Process

Parties who reach out beyond one state and create continuing relationships with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The constitutional “touchstone” is whether the defendant purposefully established “minimum contacts” in the forum state. Id. at 474, 105 S.Ct. 2174 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The foreseeability which is critical to due process is that the defendant’s conduct and connection with the forum are such that the defendant “should reasonably anticipate being haled into court there.” Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
The subject relationship “was not fleeting but ongoing.” See Edelstein v. Marlene D’Arcy, Inc., 961 So.2d 368, 372 (Fla. 4th DCA 2007). By engaging in a fourteen-year course of dealing as a limited partner in a Florida limited partnership for the ownership of a Florida apartment complex, Siegel deliberately affiliated himself with Florida. It was reasonably foreseeable that litigation might arise here, given the right of first refusal granted to the limited partners. See Fontan Assocs., Inc. v. Medpark, Inc., 650 So.2d 207, 208-09 (Fla. 3d DCA 1995) (finding that suit against a limited partner for dissolution of a Florida limited partnership satisfied due process). Moreover, “[d]irecting a conspiracy toward Florida establishes sufficient minimum contacts to satisfy due process.” Machtinger, 937 So.2d at 736. That Siegel is being haled into a Florida court is not as a result of “random,” “fortuitous,” or “attenuated” contacts. See Fontan, 650 So.2d at 209. Due process principles are clearly satisfied.

Affirmed.

KLEIN, STEVENSON and TAYLOR, JJ., concur.

. Liebowitz was also a principal in the general partner MSL, which stood to gain nearly $4 million in fees had the original sale proceeded.