# Third District Court of Appeal

## State of Florida

Opinion filed May 29, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0155
Lower Tribunal No. 20-174-M

_____

**Neal, Gerber & Eisenberg LLP,**
Appellant,

vs.

**Colleen Lamb-Ferrara, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Monroe County, Mark H. Jones, Judge.

Gunster, Yoakley & Stewart, P.A., and David R. Atkinson and Lauren V. Purdy (Jacksonville), for appellants.

Hershoff, Lupino & Yagel, LLP, and Russell A. Yagel and Matthew O. Hutchinson, for appellees.

Before LOGUE, C.J., and LINDSEY and GORDO, JJ.

LOGUE, C.J.

Neal, Gerber & Eisenberg LLP ("Neal, Gerber"), an Illinois law firm,

appeals the trial court's nonfinal order denying its motion to dismiss for lack

of personal jurisdiction. Because we conclude Appellees adequately established sufficient facts demonstrating personal jurisdiction under Florida's Long-Arm Statute and satisfying due process requirements, we affirm.

## BACKGROUND

Neal, Gerber is a law firm organized pursuant to the Illinois Uniform Partnership Act. Its principal place of business and headquarters is in Chicago, Illinois, where it maintains a single office.

In 2008, Neal, Gerber was retained by Matthew Lamb and his wife to prepare their respective wills and update their estate plans. Mr. Lamb, a prominent artist owning considerable property and assets around the world, designated Florida as his domicile in his will and estate plans. He passed away on February 18, 2012, and his widow, in her capacity as executor of Mr. Lamb's will, retained Neal, Gerber in connection with the Estate of Matthew Lamb.

Neal, Gerber advised that Florida counsel be retained to commence probate proceedings for the Estate in Florida. The executor thereafter retained Florida counsel and a probate action was filed on April 4, 2012, in the Circuit Court of Monroe County, Florida (the "Probate Action").

In August of 2012, Mr. Lamb's widow resigned as executor and personal representative of the Estate of Matthew Lamb and was replaced by their daughter, Sheila Lamb-Gabler, pursuant to the terms of Mr. Lamb's will. Neal, Gerber continued its engagement after Ms. Lamb-Gabler became the Estate's personal representative. It formally terminated its engagement with the Estate of Matthew Lamb on September 12, 2019.

On April 1, 2021, Appellees[1] filed suit against Neal, Gerber, alleging claims for breach of fiduciary duty and professional malpractice. The complaint alleged that Neal, Gerber provided estate planning services to Mr. Lamb and his wife, the purpose of which was "to maximize the value of their respective estates, to minimize associated state and federal tax obligations arising out of the deaths of [Mr. Lamb] and [his wife] and to distribute their wealth as set forth in their estate planning documents." Appellees alleged the estate planning services provided by Neal, Gerber included drafting Mr. Lamb's will and trust. The complaint further alleged that Neal, Gerber provided legal services to Ms. Lamb-Gabler as personal representative of

---

[1] Appellees Colleen Lamb-Ferrara and Rosemarie Lamb are the daughters of Mr. Lamb and his wife, Rosemarie Lamb. They are suing in their capacities as successor personal representative of the Estate of Matthew Lamb and successor co-trustees of the Matthew Lamb and Rosemarie Lamb Trusts.

the Estate of Matthew Lamb, "including appearing in the Probate [Action] on her behalf."

With respect to personal jurisdiction, Appellees' amended complaint alleged, in relevant part, as follows:

> [Neal, Gerber] is a resident of the State of Illinois and subject to the jurisdiction of this Court for the following reasons:
>
> a. [Neal, Gerber] has operated, conducted or carried on business in this State by appearing before the Court in the Probate Case and providing legal services to [Lamb-]Gabler as personal representative of Matthew's Estate and/or for the putative benefit of Mathew's Estate. Fla. Stat. § 48.193(1)(a)1.
>
> b. [Neal, Gerber] committed tortious acts within this State. Fla. Stat. § 48.193(1)(a)2.

On April 12, 2021, Neal, Gerber filed a Motion to Dismiss for Lack of Personal Jurisdiction. In support of its Motion to Dismiss, Neal, Gerber submitted various affidavits from its attorneys. Collectively, these affidavits attested that all the services Neal, Gerber performed throughout its engagement were performed from its office in Chicago, Illinois. Neal, Gerber denied any of its lawyers were ever physically present in the State of Florida while performing legal services related to the Estate of Matthew Lamb. It also denied appearing as counsel of record in the Probate Action and denied filing or serving any pleadings or papers, including any notices of appearance, in

4

the Probate Action. Neal, Gerber did admit, however, that on some occasions, at the request of the Estate and its Florida counsel, it attended hearings in the Probate Action by telephone "to remain apprised of details that might impact its work outside of Florida."

In opposition to the Motion to Dismiss, Appellees submitted the affidavit of the Estate's Florida counsel who attested that:

> 5. [Neal, Gerber] was the lead counsel for [the personal representative] and I took my instructions and directions from [attorneys] at [Neal, Gerber], in connection with the representation of [the personal representative] in the Probate [Action].
>
> 6. All pleadings I filed and activities I undertook on behalf of [the personal representative] in the Probate [Action] were at the direction and control of [Neal, Gerber].
>
> 7. I never had direct communications with [the personal representative] without [the two Neal, Gerber attorneys that directed me] or other [Neal, Gerber] attorneys' participation nor did I take any instructions from [the personal representative].
>
> 8. [Neal, Gerber] prepared the majority of all filings and reviewed and approved any filings I prepared and filed in the Probate [Action].
>
> 9. During the course of my representation of [the personal representative], I had hundreds of communications, via telephone, text, e-mail, letters or otherwise, with representatives of [Neal, Gerber].

5

Appellees also submitted the deposition of a Neal, Gerber attorney who testified that Neal, Gerber "worked closely with the personal representative's Florida counsel to ensure that matters were coordinated." In addition Appellees submitted a hearing transcripts which showed that a Neal, Gerber lawyer attended hearings (remotely) and, on behalf of the personal representative, answered questions of the judge. Finally, Appellees filed account records from the Estate of Matthew Lamb showing amounts paid and owed to Neal, Gerber for attorneys' fees and costs.

By agreement, the trial court conducted a non-evidentiary hearing on Neal, Gerber's Motion to Dismiss.[2] After the hearing, the trial court issued its Order denying Neal, Gerber's Motion to Dismiss. The trial court concluded it had personal jurisdiction over Neal, Gerber pursuant to section 48.193(1)(a)(1), Florida Statutes ("Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state"), and section 48.193(1)(a)(2), Florida Statutes ("Committing a tortious act within this state").

The trial court found Neal, Gerber acted as "lead counsel" in the Probate Action and performed most of the work with respect to the Probate Action. The trial court further found that on at least one occasion, Neal,

---

[2] The hearing was not transcribed.

6

Gerber had one of its attorneys attend a hearing in the Probate Action on behalf of the then-personal representative. The trial court also found Neal, Gerber billed a very substantial amount of fees for the legal services it provided with respect to the Probate Action.

On the issue of minimum contacts, the trial court found Neal, Gerber had sufficient minimum contacts with the State of Florida because it performed the bulk of the legal work for an estate being probated in Florida. The trial court concluded that, as a result, Neal, Gerber could reasonably anticipate being haled into court in Florida.

## ANALYSIS

A. The Two Step Inquiry.

A trial court's denial of a motion to dismiss for lack of personal jurisdiction is subject to de novo review. Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002). See also Concordia Lutheran Ministries v. Wills, 359 So. 3d 396, 400–01 (Fla. 2d DCA 2023) ("When the trial court does not conduct an evidentiary hearing, our review of an order on a motion to dismiss for lack of personal jurisdiction is strictly de novo." (citing Stonepeak Partners, LP v. Tall Tower Cap., LLC, 231 So. 3d 548, 552 (Fla. 2d DCA 2017); Rautenberg v. Falz, 193 So. 3d 924, 928 (Fla. 2d DCA 2016))).

7

The facts are to be derived "from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss." Wendt, 822 So. 2d at 1254.

Florida courts conduct a two-step inquiry to determine whether a court has personal jurisdiction over a nonresident defendant. See Belz Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787, 789 (Fla. 3d DCA 1998) (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)).

> First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
>
> The first prong—i.e., the statutory prong—of the Venetian Salami standard is governed by Florida's long-arm statute and bestows broad jurisdiction on Florida courts. . . . The second prong—i.e., the constitutional prong—is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement. A court can exercise personal jurisdiction only if the foreign [defendant] maintains "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

Wendt, 822 So. 2d at 1257 (quoting Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000)). "Moreover, a showing of

8

specific jurisdiction 'requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as "connexity."'" Kapila v. RJPT, Ltd., 357 So. 3d 241, 246 (Fla. 2d DCA 2023) (quoting Stonepeak Partners, LP, 231 So. 3d at 552).

B. The Long-Arm Statute.

Appellees alleged sufficient facts to satisfy Florida's Long-Arm Statute, section 48.193, Florida Statutes. As Florida courts have previously held, personal jurisdiction under Florida's Long-Arm Statute may extend to non-resident defendants that perform estate services for an estate probated in Florida, even where those legal services may have been performed outside of Florida.

For example, in Rogers & Wells v. Winston, 662 So. 2d 1303 (Fla. 4th DCA 1995), the Fourth District held the Florida court had personal jurisdiction over a New York law firm employed by the personal representative of a Florida estate to perform legal services for the Florida estate. Id. at 1304. The court reasoned that the law firm "was doing business in Florida and should have foreseen that it would be haled into a Florida court in the event of litigation over the services performed for the estate." Id. The court further held this was true "[e]ven if virtually all of the services provided by [the law firm] were performed in New York, because [the law firm] was employed to

9

perform these services by an estate being probated in Florida[.]" Id. See also In re Estate of Vernon, 609 So. 2d 128, 130 (Fla. 4th DCA 1992) (holding that non-resident partners of a New York law firm were subject to Florida jurisdiction because of their work on an estate being probated in Florida).

Additionally, in Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C., 9 So. 3d 651 (Fla. 4th DCA 2009), the Fourth District held the Florida court had personal jurisdiction over a New York law firm that had been sued for legal malpractice arising from legal work it performed solely in New York. Id. at 653. The New York law firm was alleged to have negligently created two Florida limited liability companies for the acquisition of assets of a Florida corporation doing business in Florida. Id. The court held that the law firm's actions giving rise to the plaintiff's malpractice and breach of fiduciary claims were within the scope of section 48.193(1)(a)(2)[3] because the law firm "caused allegedly faulty Acquisition Articles to be filed in Florida[.]" Id.

In Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996), the Eleventh Circuit (applying Florida law) held there was personal jurisdiction over a Michigan law firm that provided estate planning services to a Florida decedent. The court concluded the complaint sufficiently alleged

---

[3] Prior to 2013, section 48.193(1)(a)(2) was numbered as section 48.193(1)(b), Florida Statutes. See Ch. 13-164, § 1, Laws of Fla.

10

personal jurisdiction under section 48.193(1)(a)(2) because it alleged "the attorneys negligently drafted . . . the will and the trust documents, which they intended to be administered in Florida under Florida law[, and] [t]heir negligence [ ] allegedly caused damage to an estate in Florida." Id. at 257.

Here, Appellees' amended complaint alleged Neal, Gerber committed tortious acts in Florida by breaching its fiduciary duty to the beneficiaries of the Estate of Matthew Lamb and by committing professional malpractice in the performance of estate planning services, drafting of estate documents, and the provision of legal services in connection with the administration of the Estate of Matthew Lamb. Appellees contended these tortious acts damaged the Estate of Matthew Lamb and its beneficiaries.

In opposition, Neal, Gerber did not deny that it (1) provided estate planning services to Matthew Lamb prior to his passing, including drafting his will and subsequent codicils, and was aware at the time that the estate would be probated in Florida; (2) was retained by the personal representative of the Estate of Matthew Lamb to provide legal services to the Estate of Matthew Lamb; and (3) drafted, reviewed, and/or approved filings made in the Probate Action. Instead, Neal, Gerber simply denied it ever filed any pleadings or filings in the Probate Action or that it ever filed a notice of appearance.

11

A Neal, Gerber partner testified, however, that Neal, Gerber "worked closely with the personal representative's Florida counsel to ensure that matters were coordinated." And the Florida attorney handling the Probate Action submitted an affidavit attesting that (1) Neal, Gerber was lead counsel for the personal representative of the Estate, (2) Florida counsel took directions from Neal, Gerber in connection with his representation of the personal representative in the Probate Action, (3) Neal, Gerber prepared the majority of the filings in the Probate Action and reviewed and approved any filings prepared by Florida counsel, and (4) Florida counsel exchanged hundreds of communications, via telephone, text, e-mail, letters or otherwise, with Neal, Gerber regarding the Probate Action.

Neal, Gerber's opposition instead focused on facts that did not sufficiently rebut the jurisdictional basis set forth in Appellees' amended complaint and supporting evidence. For example, Neal, Gerber attested that all the services it provided were performed in Chicago. But the physical location of the lawyers working on a Florida probate case is not dispositive. Rogers & Wells, 662 So. 2d at 1304 ("Even if virtually all of the services provided by Rogers & Wells were performed in New York, because Rogers & Wells was employed to perform these services by an estate being probated in Florida, it was doing business in Florida and should have foreseen that it

12

would be haled into a Florida court in the event of litigation over the services performed for the estate.").

Neal, Gerber also attested that it never filed a notice of appearance or pleading or appeared as counsel of record in the Probate Action. But transcripts indicate that its lawyers attended at least one telephonic hearing and answered questions on behalf of the personal representative. A defendant's physical presence in Florida is not required, and telephonic communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(a)(2), if the alleged cause of action arises from the communications. Wendt, 822 So. 2d at 1260. Here, Appellees have alleged a claim for legal malpractice arising from the legal services provided by Neal, Gerber to the personal representative. Reiss v. Ocean World, S.A., 11 So. 3d 404, 406 (Fla. 4th DCA 2009) ("Cases interpreting Wendt have held that the communication into Florida must be tortious in and of itself, such as . . . negligent legal advice to a client.").

Finally, Neal, Gerber attested that it did not generally carry on business in Florida, as it did not maintain a Florida office, its attorneys were not licensed to practice law in Florida, and its Florida clients and Florida revenue were a minimal percentage of their total business. "But these factors are not dispositive. For example, there is no question that there need be no local

13

office nor agent, no lease, no meeting, no presence of corporate offices in Florida to warrant a finding of engagement in a business venture." Kapila, 357 So. 3d at 247 (internal citations omitted). "The Florida Supreme Court has held that engaging in a single act for profit can amount to a business venture." Labbee v. Harrington, 913 So. 2d 679, 683 (Fla. 3d DCA 2005). And Rogers & Wells v. Winston, 662 So. 2d at 1304, held that a law firm employed to perform legal services by an estate being probated in Florida was doing business in Florida.

Accordingly, Appellees' complaint sufficiently alleged facts establishing jurisdiction under Florida's Long-Arm Statute, and Neal, Gerber did not sufficiently rebut these allegations. Thus, the first jurisdictional test under Venetian Salami is met.

C. Constitutional Due Process

As to minimum contacts, the trial court properly concluded that sufficient minimum contacts were shown. The test is whether "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980).

The Beta Drywall court held that the New York law firm had sufficient minimum contacts with Florida to satisfy due process because:

14

> [The law firm] performed the necessary legal work for the formation of two Florida LLCs created for the purpose of acquiring the assets of an existing Florida corporation. [Plaintiff] claims [the law firm was] negligent in [its] performance, and thus, that [it is] liable for legal malpractice and breach of fiduciary duty. [Plaintiff's] claims arise from the activity [the law firm] directed into the state of Florida. A reasonable person having conducted the activities conducted by [the law firm] in the present case would reasonably foresee being haled into court in Florida should an issue regarding the very formation of [the Florida LLCs] arise.

9 So. 3d at 653.

In Robinson v. Giarmarco & Bill, P.C., 74 F.3d at 259, moreover, the Eleventh Circuit held that the requirements of due process were satisfied because the attorneys rendered estate planning services to the decedent knowing that he resided in Florida, and the defendants all knew that the will would be probated, and the trust administered, in Florida. The court concluded minimum contacts with the forum had been established because the attorneys "drafted documents intending for Florida law to govern the disposition of assets located in Florida." Id. The court further explained:

> The defendants are not being haled into a Florida court as the result of any random, fortuitous, or attenuated contacts, or because of any unilateral activity by the Decedent. The nature of the professional services rendered in this case was such that the defendants were fully aware that their actions or omissions would have a substantial effect in Florida. They should have reasonably anticipated the

15

> possibility of a suit arising from conduct directed towards the Florida Decedent. We conclude each defendant has purposefully directed his activities at the forum sufficient to establish minimum contacts.

Id.

Here, Neal, Gerber rendered estate planning services to Matthew Lamb with full awareness that he was domiciled in Florida and that his will would be probated in Florida. As part of its representation of the personal representative of the Estate of Matthew Lamb, moreover, Neal, Gerber admitted it "worked closely with the personal representative's Florida counsel[.]" Neal, Gerber also did not expressly deny the allegations contained in the affidavit submitted by Florida counsel, namely that Neal, Gerber was "lead counsel," that it directed Florida counsel's actions in the Probate Action, and that it prepared the majority of filings and reviewed and approved all filings prepared by Florida counsel in the Probate Action.

As such, Neal, Gerber should have reasonably foreseen being haled into court in Florida for issues arising from the activities it directed into Florida, including the estate planning services it provided Matthew Lamb, domiciled in Florida, and the legal services it provided the personal representative of the Estate of Matthew Lamb, including telephonically appearing on her behalf during a hearing in the Probate Action in Florida.

Affirmed.

16