CARROLL, DONALD, K., Judge.
The defendant in a suit for a declaratory •decree has appealed from an adverse decree entered by the Circuit Court for Duval ■County.
The question presented for our determination in this appeal is whether that court ■correctly interpreted and applied the provi■sions of an operating and guaranty agreement which had been entered into by the parties to this suit with respect to two controversies that had arisen among the parties, as described below.
On December 1, 1947 the defendant, Florida East Coast Railway Company, the ■defendants, Atlantic Coast Line Railroad Company and Seaboard Air Line Railroad ■Company, the plaintiff, Jacksonville Terminal Company (hereinafter refei-red to as the Terminal Company), and the defend.ant trustees under the first mortgage of the Terminal Company, entered into an operating and guaranty agreement concerning the joint operation of the Jacksonville Terminal facilities and the allocation of the costs thereof among the participating railroads. Two other railway companies — Southern Railway Company and Georgia Southern :and Florida Railway Company- — were also parties signatory to the said agreement.
The first of the two controversies arising under the said agreement as alleged by the plaintiffs in their complaint concerns the proper allocation of the costs of the Terminal Company of handling the United States mail at the Jacksonville Terminal. The plaintiffs contend that the mail handling costs at the Terminal Company should be included in the cost of the operation of the passenger facilities of the Terminal Company and divided among the said railroads on the basis of their respective use of the passenger facilities as determined on a car count basis in accordance with Article Sixth of the said agreement. On the other hand, the defendant contends that under the said agreement it is obligated to pay only a percentage of the mail handling costs of the Terminal Company as determined by the ratio which the mail handled for the defendant bears to the total percentage of mail handled by the Terminal Company and that the cost of handling the mail at the Terminal Company is a direct charge to be handled in accordance with Article Thirteen of the said agreement.
With reference to this first controversy, the chancellor held in his final decree, which is appealed from herein, that the “correct interpretation” of the said agreement “as to the distribution of the costs of handling the United States mail at the Jacksonville Terminal Company is that Article Three and Sixth of that Agreement control and they provide that the expense of Jacksonville Terminal Company in handling the mail shall be apportioned among the railway companies on the basis of the number of passenger cars handled for each tenant line.” The chancellor thus ruled substantially in accordance with the plaintiffs’ contentions as to the first controversy.
The second of the two controversies alleged by the plaintiffs in the suit is a dispute as to the proper allocation of expenses incurred by the Terminal Company in connection with a judgment obtained by its employee, one H. W. Reynolds, for per *668 sonal injuries sustained by him arising from the negligence of the Terminal Company while he was switching cars as a part of the industrial switching operations of the Terminal Company.
The plaintiffs contend that the expenditures of the Terminal Company in connection with those personal injuries come under the provisions of Article Twenty-Five of the said agreement, which provides that the loss, cost, and expense for such injuries provided to be borne by the Terminal Company should be considered as an operating expense and apportioned among the railway companies accordingly. On its part, the defendant contends that the distribution of that cost should be made on the basis of the number of cars switched in industrial switching for each road in relation to the total number of cars switched in industrial switching.
As to this second controversy, the chancellor ruled in his said final decree that the costs of handling the expense arising from the personal injuries to Reynolds should be apportioned under Article Twenty-fifth of the said agreement and the costs thereof should be divided among the railway lines on the ratio of the number of freight cars handled for each railway to the total number of freight cars handled as provided in Article Third of the said agreement. Thus, again, the chancellor substantially upheld the plaintiffs’ contentions.
In resolving the above two controversies, the basic and controlling considerations are the terms of the said agreement and the intentions of the parties thereto as revealed and expressed in that agreement, as considered in the light of the voluminous documentary and testimonial evidence presented to the chancellor by the parties. The record of such evidence in this hard-fought litigation is crammed into three bulging court files, and the basic document itself, the operating and guaranty agreement of December 1, 1947, comprises 36 printed pages, In our judgment, to detail in this opinion the provisions of that agreement and to detail the said evidence would unduly lengthen this opinion and serve no useful purpose.
We have, however, read the said agreement in its entirety, examined the said evidence, and considered the arguments of the parties’ counsel, and have reached the conclusion that the chancellor’s findings and conclusions in his said final decree concerning the two controversies discussed above are correct in both law and fact, and that the defendant-appellant has failed to carry its burden of demonstrating that the chancellor abused his discretion in entering the final decree appealed from herein. We have reached this conclusion without feeling any need to invoke the presumption of validity which clothes the chancellor’s findings and conclusions when his final decree is brought before us for appellate review.
 The strongest argument made by the appellant in this appeal is that under the chancellor’s construction of the said agreement, is inequitable and disadvantageous to the appellant as compared to the effect upon the other railway companies that executed the agreement. Nevertheless, neither the chancellor nor this court has the authority to rewrite that agreement. His and our only responsibility is to attempt, through the application of accepted principles, to reach a reasonable construction of the agreement in the intention of the parties thereto as expressed in that agreement. The limitations of the chancellor’s and our authority in such a case was well delineated by the District Court of Appeal, Second District of Florida, in City of Tampa v. City of Port Tampa, 127 So.2d 119 (1961), which court quoted with apparent approval the following statement of the rule in 12 Am.Jur., Contracts, par. 228:
“Interpretation of an agreement does not include its modification or the creation of a new or different one. A court is not at liberty to revise an agreement while professing to construe it. Nor does *669 it have the right to make a contract for the parties— * * * ”
To the same effect, the Supreme Court of Florida in Gabel v. Simmons, 100 Fla. 526, 129 So. 777 (1930), quoted with approval the following statement from an earlier decision :
“All parties sui juris are free to make whatever contracts they may choose so long as no fraud or deception is practiced and there is no infraction of law. The fact that one of the parties to a contract made a hard bargain will not alone avoid the contract.”
Accordingly, the final decree appealed from herein should be and it is
Affirmed.
RAWLS, C. J., and WIGGINTON, J., concur.