212 So.2d 347 (1968)
ALL-DIXIE INSURANCE AGENCY, INC., Appellant,
v.
W.J. MOFFATT, Appellee.
No. 67-760.
District Court of Appeal of Florida. Third District.
July 9, 1968.
Rehearing Denied July 26, 1968.
*348 Hendricks & Hendricks, Miami, for appellant.
Terry, McKee & Stephens, Miami, for appellee.
Before CHARLES CARROLL, C.J., and Pearson and HENDRY, JJ.
HENDRY, Judge.
Prior to January of 1961, the defendant below, W.J. Moffatt, was engaged in the operation of an insurance business being conducted as W.J. Moffatt Agency, Inc. Moffatt then entered into negotiations with Harris Johnson for the sale of the business. Johnson and his principals organized Moffatt Insurance Agency, Inc., which later became All-Dixie Insurance Agency, Inc., the plaintiff below, and an agreement for sale was entered into on January 26, 1961, whereby the Johnson organization was to purchase the name and good will of the agency, its expiration records, copies of daily reports, supplies, and all tangible licenses. The price was set by formula, as follows:
"1. To pay the Seller the dollar value of one and one-half (1/2) times the commissions on the accounts and business written by said agency from 2/1/60 to *349 March 1, 1961, excepting however, the following:
"(a) Resolute Insurance Company retrospective policies.
"(b) Any brokerage business written either for or with another insurance agency.
On insurance commissions derived from solicitors for or salesmen of the agency, the manner of calculation for determination of the dollar value to be paid as to these particular accounts shall [be] three-quarters (3/4) of a one (1) year annual commissions."
The purchaser paid $15,000.00 cash at closing, and the balance by promissory note in the amount of $35,236.68, the purchase price having been calculated as $50,236.68.
Almost at once disputes arose between the parties; there were accusations and counter-accusations concerning corporate records not delivered, controversy over mail intercepted by Moffatt, who was allegedly continuing operation of his former business in competition with the purchasers, and disputes concerning exactly what was to be considered as "brokerage business" for which the purchasers were not obligated to pay under the terms of the agreement. Ultimately, All-Dixie Insurance Agency, Inc., filed its complaint seeking an accounting both of the amount of the purchasers' unpaid obligation and of the business done by Moffatt subsequent to the sale. Additionally the plaintiff sought damages, both compensatory and punitive, as well as injunctive relief prohibiting Moffatt from soliciting renewals from among the agency's customers.
After hearing testimony from both parties, the chancellor entered his final decree, which reads in part:
"1. That the parties hereto did enter into and execute a valid and binding contract dated the 26th day of January, 1961, a copy of which was introduced into evidence and identified as Plaintiff's Exhibit #1.
"2. The Court at the outset, based upon the issues raised in the pleadings, and the language of the contract, found that testimony was required in order to determine the true intent of the parties concerning paragraph One (1), subsection (b), which reads as follows: * * * `any brokerage business written either for or with another insurance agency' * * * in that the true intent and meaning of the parties as to said paragraph constituted an important factor to a just decision in the cause.
"3. The Court having heard the testimony and considered the evidence, finds:
"A. That the insurance policies in question was business produced, owned and the renewals controlled by the defendant.
"B. That said insurance policies constituted a substantial percentage of the agency business.
"C. That said insurance policies were written on substandard, long haul risks and that the facilities available to underwrite such risks were limited.
"D. That the items of insurance policies above referred to and as are more particularly described in the analysis and audit, introduced as Plaintiff's Exhibit #41, prepared by Morgan, Altemus & Barrs, dated December 19, 1963, are not brokered business as intended by the parties to be excluded or excepted from the contract price as pursuant to paragraph One (1) subparagraph (b) of the contract.
* * * * * *
"6. That the parties hereto by mutual stipulation and agreement agreed that an audit was in order and jointly moved the Court to enter an Order appointing the firm of Morgan, Altemus & Barrs, Certified Public Accountants, to conduct an analysis and accounting of the books and *350 records pertaining to the agency business purchased by the Plaintiff from the Defendant; further, that the parties hereto did stipulate and agree that the results of said audit would be binding upon the Plaintiff and the Defendant as to the accuracy and totals of said audit; further, the Court by its findings adopts the analysis and accounting rendered by Morgan, Altemus & Barrs, dated the 19th day of January, 1965, and introduced as Plaintiff's Exhibit #41.
* * * * * *
"It is thereupon,
"Ordered, Adjudged And Decreed
* * * * * *
"2. That the sales price of the agency business purchased by the Plaintiff from the Defendant, pursuant to the terms of the contract dated January 26, 1961, and as set forth in the analysis and accounting of Morgan, Altemus & Barrs, Certified Public Accountants, dated the 19th day of December, 1963, and the 16th day of January, 1965, be and the same is hereby found to be the sum of Forty-Six Thousand One Hundred Fifty and 29/100 ($46,150.29) Dollars.
"3. That the Plaintiff shall receive as credit against said sales price all sums of money heretofore paid by the Plaintiff to the Defendant as a down payment and on a deferred basis.
* * * * * *
"That Plaintiff does have and recover as a credit against the purchase price the sum of $1,954.05."
The final decree granted plaintiff certain other relief, but made no disposition of plaintiff's prayer for an award of costs and attorneys' fees.
Plaintiff's main point on appeal is that the lower court erred in finding that paragraph (1), subsection (b) of the agreement was ambiguous and in ruling, on the basis of testimony as to the intent of the parties, that certain business carried on through another insurance agency was not "brokerage business". We are of the opinion that appellant is correct in maintaining this contention. Our conclusion is based upon the well-established rule that where the parties to a contract have selected the language contained therein, and where that language is clear and unambiguous, the courts are without authority to rewrite the terms of the agreement to give them a meaning other than the one expressed. Hamilton Const. Co. v. Board of Public Instruction, Fla. 1953, 65 So.2d 729; Florida East Coast Railway Co. v. Atlantic Coast Line Railroad Co., Fla.App. 1967, 193 So.2d 666; Paddock v. Bay Concrete Industries, Inc., Fla.App. 1963, 154 So.2d 313. We find the case of Gendzier v. Bielecki, Fla. 1957, 97 So.2d 604, to be closely analogous in the application of the above rule. The Gendzier opinion recites in part:
"* * * In the instant case no effort was made to establish fraud, mistake or error. The appellees merely undertook to prove a personal unilateral intent with reference to their own motive in signing the document. The rule is well-settled in this state as well as everywhere else that when competent parties reduce their engagements to writing in terms that create a legal obligation without any uncertainty as to the object or extent of the engagement as between them, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing. The writing itself is the evidence of what they meant or intended by signing it. The test of the meaning and intention of the parties is the content of the written document. Ross v. Savage, 66 Fla. 106, 63 So. 148.
"It should be remembered that we are here dealing with an effort by one party to a writing to testify as to his own personal mental attitude with a regard to the writing rather than an effort to show the mutual intent of the parties by surrounding facts and circumstances. Likewise, we are not here confronted *351 with an assault on the validity of one's assent to the terms of the agreement because of fraud, accident or mistake. The appellees conceded that they signed the instrument and attempt merely to support their position by testifying as to their uncommunicated intention. They do not contend that the instrument on its face is ambiguous, contradictory or impossible of interpretation without supplementary extrinsic evidence.
"Some courts have stated the rule to be that in determining whether there has been a mutual consent to a contract, the courts will not explore the `subjective intent' of the parties but only their `objective intent'; that is, the courts will undertake only to determine what a reasonable man would believe from the outward manifestations of the consent of the parties as evidenced by the language of the written document. Leo F. Piazza Paving Co. v. Bebek & Brkich, 141 Cal. App.2d 226, 296 P.2d 368. We think it unnecessary to burden this opinion with a theoretical discussion of the distinctions between objective and subjective intent in the problem of interpreting a contract which the parties themselves have expressed in writing. The rule is probably best expressed by the late Justice Holmes in "The Path of the Law", 10 Harvard Law Review 457, where it was stated in part that `the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs  not on the parties having meant the same thing but on their having said the same thing.' [citations of authority omitted]."
The provisions of paragraph (1), subsection (b) of the agreement in question, above quoted, can scarcely be considered vague or ambiguous. The term "brokerage business" is one well known and understood within the common usage of the field of insurance. See: Century Ins. Co. v. First Nat. Bank of Hughes Springs, 102 F.2d 726 (5th Cir.1939). The remaining portion of subparagraph (b) concerning business "written for or with another insurance agency" is equally apparent in meaning. It was shown by appellee's own testimony that certain of the policies comprising the agency's business (those policies described in paragraph 3 of the final decree above quoted) were written by the firm of Shelley, Middlebrooks & O'Leary, Inc., insurance agents in Jacksonville, Florida. We can find no merit in appellee's counter-argument that, although these accounts would usually be considered brokerage business, he intended that they be "house accounts" which he had not counted on giving away. Appellee will be bound by the unambiguous terms of his contract; therefore, the decree appealed must be reversed.
Appellant raises the second contention that it was error to deny the prayer for an award of costs and attorney's fees contained in the complaint. It is settled that attorney fees are not recoverable unless provided for by contract or by statute. Schwartz v. Biscontini, Fla.App. 1966, 187 So.2d 81. The instant case falls readily within the first exception by virtue of the provisions of paragraph 3 of the purchase agreement whereby the party resorting to legal proceedings for enforcement of contract rights is entitled to collect costs and a reasonable fee for legal services.
We find no error in that portion of the final decree awarding to appellant a credit against the purchase price in the sum of $1,954.05. On the basis of the foregoing, the decree appealed is affirmed in part and reversed in part, and the cause is remanded with directions to the lower court to enter an order granting appellant an accounting for the purpose of determining the value of those policies described in paragraph 3 of the final decree appealed, which policies constitute brokerage business and hence are to be excluded from the purchase price formula pursuant to the provisions of paragraph (1), subsection (b) of the purchase agreement. It shall be the *352 further duty of the trial court upon remand of the cause to enter an order fixing the amount of attorney's fees to be awarded appellant.
Affirmed in part; reversed in part and remanded for further proceedings not inconsistent with this opinion.