# Third District Court of Appeal

## State of Florida

Opinion filed October 17, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2064
Lower Tribunal No. 17-4154
_____

**Pablo Antoniazzi, et al.,**
Appellants,

vs.

**Hamed Wardak, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Rivero Mestre, LLP, and M. Paula Aguila, Andrés Rivero, and Alan H. Rolnick, for appellants.

Kopelowitz Ostrow, Ferguson, Weiselberg, Gilbert, and Alexis Fields (Fort Lauderdale), for appellees.

Before SALTER, EMAS and LOGUE, JJ.

EMAS, J.

## INTRODUCTION

Pablo Antoniazzi ("Antoniazzi"), Estrategia Investimentos USA, Inc. ("Estrategia Inc."), and Estrategia Investimentos, LLC ("Estrategia LLC") (collectively, "Appellants") appeal an order denying their motion to dismiss the complaint for lack of jurisdiction, based upon a forum selection clause. We reverse and hold that the forum selection clause is mandatory and unambiguous, and that application of the mandatory forum selection clause to the instant action required the action to be filed in Brazil.

## FACTS AND PROCEDURAL HISTORY

On March 4, 2013, Hamed Wardak and NCL Holdings, Ltd. (collectively "Appellees") entered into an Agreement for Account Opening (the "Banking Agreement") with Brazilian bank, Estrategia Investimentos S.A., ("the Bank"). Wardak is the owner of the bank account and the deposited funds at issue. Antoniazzi was the Bank's representative and signed the Banking Agreement on behalf of the Bank. Estrategia Inc. was a strategic trading partner of the Bank, while Estrategia LLC provided financial advising services.

Appellees allege that when they entered into the Banking Agreement with the Bank, they were establishing an account for banking services that would provide Wardak with constant access to the funds. After the account was established, Wardak wired $2.7 million dollars into it, but soon afterward, the

2

Bank restricted his access to the funds. After this dispute arose regarding access to the funds, the Bank provided Wardak with a letter of understanding, in which it agreed to return all funds to Wardak with interest. Wardak alleges that none of the $2.7 million has been returned.

On May 5, 2016, the Brazilian government took over the Bank and initiated liquidation proceedings. Thereafter, Wardak and NCL filed an action against Appellants and the Bank,[1] sounding in breach of contract, fraud in the inducement, fraudulent misrepresentation, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Appellants filed a motion to dismiss the complaint for lack of jurisdiction, alleging that the forum selection clause contained in the Banking Agreement was mandatory and unambiguous, and that the exclusive forum for this action was Brazil.

Appellees countered that the forum selection clause was permissive, and not mandatory and that the forum selection clause permitted Appellees to file in Brazil or in the forum where "the branch of the Bank maintaining the contractual relationship" with Appellee Wardak is located, i.e. Miami. Appellees further maintained that, even if the clause was mandatory, the term "branch of the Bank" was ambiguous and it should be interpreted to include the Bank's office in Miami.

---

[1] The Bank has not appeared at the trial level or in this appeal.

The forum selection clause in the Banking Agreement provides:

**Applicable law—venue for judicial and foreclosure proceedings**
All legal relations between the client and the Bank are governed by Brazil law.[2] The place of performance, the exclusive jurisdiction for all legal action and the venue for legal proceedings if the client is resident abroad is the place where the head office or branch of the Bank maintaining the contractual relationship with the client is located. To that end, the client elects the head office or branch concerned as its address for legal service. The Bank nevertheless reserves the right to instigate proceedings in the courts of the client's place of residence or before any other competent court.

Following an evidentiary hearing, the trial court denied the motion to dismiss, finding: "the forum selection clause lacks sufficient mandatory or exclusive language binding the parties to a specific jurisdiction or venue;" and that, even if the clause was mandatory, "venue is proper in Miami-Dade County because a 'Branch office' is nothing more than a location other than the main office."

**STANDARD OF REVIEW**

The trial court's construction of the forum selection clause is subject to de novo review. Celistics, LLC v. Gonzalez, 22 So. 3d 824, 825 (Fla. 3d DCA 2009). The initial determination of whether a contract term is ambiguous is a question of

---

[2] Although the Banking Agreement expressly provides for application of Brazilian law, the parties (in the trial court and on appeal) relied generally upon Florida law (and persuasive Federal law) in support of their respective positions, and neither relied upon nor cited Brazilian law. Thus, this court applies Florida law. See, e.g., Martinez v. Bloomberg LP, 740 F.3d 211, 223 (2d Cir. 2014); Bailey v. ERG Enters., LP, 705 F.3d 1311, 1320 (11th Cir. 2013); Chase Manhattan Bank v. Rood, 698 F.2d 435, 436 n. 1 (11th Cir. 1983).

4

law, which we also review de novo.  Escobar v. United Auto. Ins. Co., 898 So. 2d 952 (Fla. 3d DCA 2005).  If a contract term is ambiguous, requiring the trial court to resolve factual issues, we review the trial court's determinations of fact for competent substantial evidence.  Weisfeld-Ladd v. Estate of Ladd, 920 So. 2d 1148, 1150 (Fla. 3d DCA 2006); Laufer v. Norma Fashions, Inc., 418 So. 2d 437 (Fla. 3d DCA 1982).

**ANALYSIS**

**1.  Whether the forum selection clause is permissive or mandatory**

We hold that the provision is mandatory and that the trial court erred in determining that the forum selection clause was permissive.

The relevant portion of the forum selection clause provides:

> The place of performance, *the exclusive jurisdiction for all legal action and the venue for legal proceedings* if the client is resident abroad *is the place where the head office or branch of the Bank maintaining the contractual relationship with the client is located.*

(Emphasis added.)

The general rule is that "a forum selection clause will be considered permissive if it lacks words of exclusivity."  Celistics, 22 So. 3d at 826.  By contrast, "a forum selection clause is mandatory where the plain language used by the parties indicates 'exclusivity.'"  Espresso Disposition Corp. 1 v. Santana Sales & Mktg. Grp., Inc., 105 So. 3d 592, 595 (Fla. 3d DCA 2013).  A forum selection clause will be deemed mandatory where, by its terms, suit may be filed only in the

5

forum named in the clause, whereas "permissive forum selection clauses are essentially a 'consent' to jurisdiction or venue in the named forum and do not exclude jurisdiction or venue in another forum." Travel Exp. Inv. Inc. v. AT & T Corp., 14 So. 3d 1224, 1226 (Fla. 5th DCA 2009) (quoting Shoppes Ltd. P'ship v. Conn, 829 So. 2d 356, 358 (Fla. 5th DCA 2002)).

In response to the motion to dismiss, Appellees contended, and the trial court agreed, that the forum selection clause lacks words of exclusivity and thus, must be deemed permissive.

Importantly, however, the absence of the term "shall" or "must" does not necessarily render a forum selection clause permissive. Even in the absence of such "magic words," a forum selection clause may be deemed mandatory where the language used "does clearly indicate that it is mandatory in nature." Celestics, 22 So. 3d at 826 (quoting Golf Scoring Sys. Unlimited, Inc. v. Remedio, 877 So. 2d 827, 829 (Fla. 4th DCA 2004)).

Here the forum selection clause provides: "The place of performance, *the exclusive jurisdiction* for all legal action and *the venue* for legal proceedings . . . is the place . . . " (emphasis added). Thus, the plain language of this contract expresses an unmistakable intent to make the forum provision exclusive. See, e.g., Agile Assur. Group, Ltd. v. Palmer, 147 So. 3d 1017 (Fla. 2d DCA 2014) (holding the following forum selection clause mandatory: "Any legal suit, action, claim,

6

proceeding[,] or investigation arising out of or relating to this Agreement may be instituted exclusively in the courts of Makati City and Employee waives any objections which he may now or hereafter have to such venue of any such suit ... and irrevocably submits to the personal and subject matter jurisdiction of any such court"); Golf Scoring Sys., 877 So. 2d at 829.[3]  Accord, Michaluk v. Credorax (USA), Inc., 164 So. 3d 719, 725 (Fla. 3d DCA 2015).

We further reject Appellees' contention that the lack of mutuality in the forum selection clause renders it permissive, rather than mandatory.  The relevant portion of the clause provides:

> The place of performance, the exclusive jurisdiction for all legal action and the venue for legal proceedings if the client is resident abroad is the place where the head office or branch of the Bank maintaining the contractual relationship with the client is located. To that end, the client elects the head office or branch concerned as its address for legal service. *The Bank nevertheless reserves the right to instigate proceedings in the courts of the client's place of residence or before any other competent court.*

(Emphasis added.)

A contract will be considered valid even when its obligations are not mutual as long as there is consideration for the contract as a whole.  Murry v. Zynyx

---

[3] Further, the mere fact that there were two possible fora for Appellees to file an action (i.e., "the place where the head office _or_ branch of the Bank maintaining the contractual relationship with the client is located") does not alter the mandatory nature of this forum selection clause.  See, e.g., Weisser v. PNC Bank, N.A., 967 So. 2d 327, 328  (Fla. 3d DCA 2007) (parties agreed "to the exclusive jurisdiction of United States District Court for the District of Kansas or the District Court of Johnson County, Kansas").

Mktg. Comm. Inc., 774 So. 2d 714, n. 2 (Fla. 3d DCA 2000). This general proposition of law applies in the instant context, and we hold that the non-mutuality of the forum selection clause does not render it invalid or permissive. See, e.g., Silverman v. Carvel Corp., 192 F. Supp. 2d 1 (W.D.N.Y. 2001) (holding nonmutuality of forum selection clause did not render clause invalid even though it restricted venue only in actions brought by plaintiff against defendant but contained no similar restrictions on venue in actions brought by defendant against plaintiff). See also Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp., 838 F.2d 656 (2d Cir. 1988); Medoil Corp. v. Citicorp, 729 F. Supp. 1456, 1459 (S.D.N.Y.1990) (upholding forum selection clause which required account holder to file all legal action "at the location of the Bank's office appearing on this Agreement," while providing that Bank "may bring action against the Account Holder(s) before the courts or any other competent authority at the place of residence of the Account Holder(s) or elsewhere").[4]

---

[4] Appellees also contend that, because Appellants were non-signatories to the contract, Appellants do not have standing to enforce the venue provision of the Banking Agreement. However, this Court has previously held that the mandatory nature of a forum selection clause "equally applies to the non-signatory defendants due to the fact that the claims arise directly from the agreement, as well as due to the nature of the commercial relationship of the parties as it relates to the agreement itself." Reyes v. Claria Life & Health Ins. Co., 190 So. 3d 154, 159 n.2 (Fla. 3d DCA 2016) (quoting World Vacation Travel, S.A., v. Brooker, 799 So. 2d 410, 412–412 (Fla. 3d DCA 2001)). See also Citigroup Inc. v. Caputo, 957 So. 2d 98, 102 (Fla. 4th DCA 2007) (holding a non-signatory may invoke a signatory's forum selection clause where the non-signatory and signatory are related.) Here, the actions asserted in the complaint arise directly out of the Banking Agreement,

8

## 2. Whether the phrase "branch of the Bank" is ambiguous or unambiguous

The trial court concluded alternatively that, even if the forum selection clause is mandatory, the phrase "branch of the Bank maintaining the contractual relationship with the client" was ambiguous. Resolving that ambiguity, the trial court found that Miami-Dade County was a proper forum because the Bank had an "office" in Miami. We hold that the trial court erred in this regard, because there was no ambiguity and, under a plain reading of the clause, the office in Miami was not a "branch of the Bank" as that term was used in the Banking Agreement and therefore could not serve as a proper forum for the action.

That portion of the clause at issue provides:

"[T]he exclusive jurisdiction for all legal action and the venue for legal proceedings if the client is resident abroad is the place where the head office or branch of the Bank maintaining the contractual relationship with the client is located."

Because Appellees are "resident abroad" (i.e., not living in Brazil), the instant action could be filed only where (1) the head office is located (i.e., Rio de Janeiro, Brazil); or (2) the branch of the Bank maintaining the contractual relationship with the client is located. The term "branch of the Bank" is not defined in the Banking Agreement.

---

and the only commercial relationship between the parties is the banking relationship governed and established by the Banking Agreement.

In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract, which is the best evidence of the intent of the parties. Prudential Ins. Co. of Am. v. Wynn, 398 So. 2d 502, 503 n. 1 (Fla. 3d DCA 1981) (citing Jacobs v. Petrino, 351 So. 2d 1036 (Fla. 4th DCA 1976)). "If a contract is clear, complete and unambiguous, there is no need for judicial construction." Hunt v. First Nat. Bank of Tampa, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980) (citing Hamilton Constr. Co. v. Bd. of Public Instruction, 65 So. 2d 729 (Fla.1953)). See also All-Dixie Ins. Agency, Inc. v. Moffatt, 212 So. 2d 347 (Fla. 3d DCA 1968).

The Miami office was the location where Wardak met with Antoniazzi, a Bank representative, to negotiate and execute the Banking Agreement. However, this is insufficient to establish that the Miami office constituted a "branch of the Bank." It was undisputed that the Bank did not establish or maintain any State-regulated[5] or federally-regulated branch offices[6] within the United States.[7]

---

[5] See, e.g., §§ 658.23, 663.04-.05, Fla. Stat. (2016) (setting forth application, licensing and approval requirements before a foreign bank can operate a branch in Florida).

[6] See, e.g., 12 U.S.C. § 3102 (2016) (setting forth application and approval requirements before a foreign bank can establish and operate a Federal branch or agency in any State).

[7] Though not necessary to our decision, we further note that, at the evidentiary hearing, Appellants introduced evidence that Appellees were looking to deposit the $2.7 million into a foreign bank that had no presence in the United States and would not respond to a subpoena from a court in the United States. The Bank apparently met these criteria: An attorney who was advising Wardak during the negotiation of the Banking Agreement testified it was his understanding that the

10

Nevertheless, Appellees maintain that the phrase "branch of the Bank" is ambiguous and, further, that the Miami office should be construed to be a branch of the Bank because this is where Appellees and the Bank met on two or three occasions to negotiate and sign the Banking Agreement. The trial court concluded that the Miami office constituted a branch of the Bank "because a 'branch office' is nothing more than a location other than the main office."

However, no evidence was presented that the Miami office was a location at which deposits were received, checks paid, or funds withdrawn. Indeed, the affirmative testimony established that the Miami office did not have an ATM machine or a teller. There was no evidence that Appellees ever deposited or withdrew any funds at the Miami office, or that such could be done at the Miami office.

The terms "Branch bank" and "Branch office" are defined in Black's Law Dictionary:

> **Branch bank.** An office of a bank physically separated from its main office, with common services and functions, and corporately part of the bank. Under the National Bank Act, term at very least includes any place for receiving deposits or paying checks or lending money apart from chartered premises. Nebraskans for Independent Banking, Inc. v. Omaha Nat. Bank, C.A. Neb., 530 F.2d 755, 764.

---

Bank "would not respond to a subpoena for a U.S. court." The attorney also acknowledged sending an email advising Wardak that Estrategia Investimentos, S.A. (i.e., the Bank) "maintains no US presence, so it is perfect." Thereafter, Wardak and NCL deposited the funds with the Bank.

11

* * *

"Branch office" of a bank or savings bank includes an office, unit, station, facility, terminal, space or receptacle at a fixed location other than a principal office, however designated, at which any business that may be conducted in a principal office of a bank or savings bank may be transacted. Included in this definition are off-premises electronic bank facilities.

Under Uniform Commercial Code, branch bank includes a separately incorporated foreign branch of bank. § 1-201.

BLACK'S LAW DICTIONARY, 188 (6th ed. 1991).

See also § 658.12(4), Fla. Stat. (2016) (providing: "'Branch' or 'branch office' of a bank means any office or place of business of a bank, other than its main office and the facilities and operations authorized by ss. 658.26(4) and 660.33, at which deposits are received, checks are paid, or money is lent"); 12 U.S.C. § 36(j) (2016) (providing: "The term 'branch' as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent. The term 'branch', as used in this section, does not include an automated teller machine or a remote service unit."); 12 U.S.C. §3101(3) (2016) (providing: "For the purposes of this chapter . . . 'branch' means any office or any place of business of a foreign bank located in any State of the United States at which deposits are received.") We conclude that the Miami office

12

does not fall within the ordinary meaning of the term "branch of the Bank." No ambiguity existed, and no further evidence was necessary to define the term or discern the intent of the parties.

## CONCLUSION

Because the forum selection clause is mandatory, exclusive and unambiguous, we reverse the trial court's order denying Appellants' motion to dismiss, and remand for further proceedings consistent with this opinion.